## DIAS AND BURN v. GLOVER.

An acknowledgment of a deed of lands in this state, taken before " the president of the court of common pleas for the first circuit "of Warren county, Ohio," does not entitle it to be recorded, there being an appeal from that court to the supreme court.

Quere, whether a certificate that the *within named A. B. acknowledged, &c.,* is sufficient. *It appears,* that a conveyance by one out of possession, shall prevail as between the parties by way of estoppel, although a stranger cannot set it up against the ejectment of the grantor. A release by one out of possession to one in possession being valid, and invalid only when made to strangers, held that such a release to a party who had contracted for the purchase of the premises, and paid part of the purchase money, was operative in a court of chancery.

A conveyance was made to J. C. and P. C. his wife. *Habendum,* " to the said J. C. and P. his wife, as tenants in common, and in " equality of estate, and not as joint tenants." Held,—that the common law rule, that husband and wife take by entireties and no alienation of one could prevent the right of the survivors, applied in this case. The authorities stated, and the opinion of Mr. *Preston* to the contrary, questioned.

The general rule of the court, on a bill for performance of a contract of sale, is to allow interest on the purchase money from the period fixed for completion, and to give the purchaser the rents and profits. Where the vendor has caused delay without cause, and the interest will exceed the rents, he will be refused the former, retaining the latter.

July 25, 29.        *Mr. Benedict*, for complainants.

*Mr. Buckley*, for defendant.

THE ASSISTANT VICE-CHANCELLOR :—The bill in this cause is filed to enforce a contract made by the defendant, for the purchase of a lot of land in the city of New-York. The complainants offered the same for sale, under a power in the will of their testator. The lot was struck off to the defendant, a deposite paid, and the usual memorandum of the auctioneer signed. Two leading objections are taken to the title, and upon the ground of these, performance is refused. Edward Meeks, the testator, appears to have been in possession of the premises, from the year 1817. He died in 1823. His representatives have since held the possession. Jonathan Conrey and Priscilla his wife, were the owners of the lot under a deed from Elias Shell, dated the 7th of March, 1797. Jonathan Conrey devised his one half to his sons John and Jonathan. The day of his death does not appear, but it must have been before September, 1811. On the 19th of September, 1811, a power of attorney was executed by John Conrey, and Sarah his wife, to Jonathan Conrey, to sell and convey the half of the premises. Under this, a deed was executed by Jonathan, as attorney, and in his own right, conveying the one half to Priscilla Conrey.

I pass over this power and the deed, so far as they effect the fourth part belonging to John Conrey. The objections appear unanswerable. But it operated effectually, to convey Jonathan's individual right. It left, however, the right of his wife Mary untouched. On the 26th of September, 1812, John Conrey and Sarah his wife, and Jonathan Conrey and Mary his wife, all of Warren, in the

State of Ohio, united in a deed to Priscilla Conrey. This conveyance is in every particular sufficient, except that it is acknowledged before Francis Dunlary, president of the court of common pleas for the first circuit, of which Warren county is a part. The objection, that president Dunlary was not an officer authorized to take an acknowledgment under our statute, appears decisive. The court of common pleas is subject to the appellate jurisdiction of the supreme court. ( *Williams' Register,* vol. iii. p. 389.) The deed was not recorded.

On the 14th of May, 1814, the same parties, viz., John Conrey and wife, and Jonathan Conrey and wife, executed another deed to Priscilla Conrey. The certificate of acknowledgment is as follows: " State of " Ohio. Personally appeared before the undersigned, " one of the judges of the supreme court, in and for the " State of Ohio, *the within named* Jonathan Conrey " and Mary his wife, and acknowledged the within deed " of conveyance to be their voluntary act and deed, for the " uses and purposes therein contained ; and the said Mary " being examined, &c." Signed, J. Brown. There is precisely the same certificate as to John Conrey and wife. This deed was recorded. On the 6th of September, 1836, after the bill was filed, this deed was proven by the subscribing witness, as to its execution by John Conrey and Sarah his wife, and upon this proof was again admitted to record. But the same objection applies here as to the acknowledgment before Dunlary, of the deed of September, 1812. It is proven before Benjamin Hinckson, president in and for the seventh judicial circuit, including Warren county. By a reference to *Williams' Register,* (vol. iii. p. 389,) it appears that the state is divided into nine circuits of the court of common pleas, with a president to each circuit. The supreme court has a chief justice and associate judges. The style of the judges of common pleas is, " the president and associate judges of the court of com- " mon pleas." This part of the case must therefore depend upon the validity of the acknowledgment before Judge Brown. It is fully settled, that if the certificate had been

"personally appeared before me, Jonathan Conrey and "Mary his wife, *known to me*, and acknowledged, &c.," it would have been valid. (*Troup* v. *Haight*, *Hopkins*, 267. *Duval* v. *Covenhoven*, 4 *Wendell*, 563.) It appears to me, that the phrase used in this certificate, more clearly implies a knowledge by the officer, that the persons appearing before him were the grantors in the deed, than the phrase employed in *Troup* v. *Haight*. When the officer speaks of Jonathan Conrey, and Mary his wife, *within named*, it can mean only the Jonathan and Mary Conrey, of the county of Warren, State of Ohio, named in that deed; in other words, the grantors described therein. I believe also, that the usage will be found as strong upon this form, as upon the other.

In the case of *Jackson* v. *Osborn*, (2 *Wendell*, 555,) however, where the deed was proven by a witness, who testified that he saw the within grantors sign the deed for the purposes, &c., the certificate was held bad.

The question, therefore, is very doubtful, whether this certificate is valid. But I consider that the case may be determined upon another ground, which will avoid this difficulty.

First, however, the objection growing out of the lease given to Priscilla Conrey must be examined. It appears that on the 5th of April, 1816, Priscilla Conrey conveyed the whole of the premises in question to Edward Meeks, the testator, in fee, by a deed duly recorded. On the 19th of November, 1817, Priscilla Conrey executed a lease to Meeks of the premises, to hold to him during the term of her natural life, paying, during such term, the sum of $50 annually, with the usual covenant, that upon the determination of the estate, the premises should be surrendered by the party of the second part. This was found among the papers of Meeks, and after his death was recorded, viz., in October, 1836. By the will of Priscilla Conrey, all her estate, real and personal, was devised to Elizabeth Reid. The devise is general: this lot is not specified. Elizabeth Reid brought successively two ejectment suits for the premises, and a verdict was had against her in each case.

The judge who presided at the trial charged, that the lease did not stop the party from setting up his title under the deed, upon the determination of the leasehold interest; and that the question was, whether the deed had been improperly obtained. In her will, she enjoins her executors to prosecute the claim, and gives the residue of her estate to them absolutely. The executors, on the 25th of January, 1838, executed a release of the premises to Russel Glover. This was after the answer in this cause was filed, and was tendered on — day of July, 1838.

It is objected, that the grantors in this instrument had not been in possession, and that it could not operate as a release, because the grantee was not in possession. Two answers may be made to this objection. *First*, Chancellor Kent intimates the opinion, that although a conveyance by one out of possession is so far a nullity, as that the grantor may bring ejectment, and a third person cannot set up the deed, yet as between the parties, it may be good by way of estoppel. (4 *Com.* 448.)

*Next*, it is admitted, that neither the old nor the present statute applies to a release to one in possession, but only to grants to strangers. I am strongly of opinion, that a purchaser who has entered into a contract, and paid part of his purchase money, is not such a stranger as to be within the purview of the act. In a court of equity, he is constructively the owner, and in possession from the date of the contract. His right to the rents then commences. (*Paine* v. *Meller*, 6 *Vesey*, 349. *Nenerl* v. *Hassey*, 2 *Ball & B.* 280. *Atkinson on Titles*, 286.)

I have thus examined the questions raised by counsel, but there is another upon which my decision is chiefly founded. It appears that Priscilla Conrey was originally a grantee with her husband, of the premises in question, by a deed from Shell, dated in 1797. The *habendum* in that deed is " to the said Jonathan Conrey and Priscilla " his wife, as tenants in common, and in equality of es- " tate, and not as joint tenants." In the case of a grant to husband or wife, they are both seised of the entirety ; neither can sell without the consent of the other, and the

1839.

Dias and Burn
*v.*
Glover.

survivor takes the whole. (See 2 *Kent's Com.* 111, and cases.) It may be, that the conveyancer inserted these very special words, to avoid the operation of this rule. The question is, if, by the principles of law, this can succeed.

We find that the reason given for the rule is, that husband and wife are one person in the law, and cannot therefore take as tenants in common, or joint tenants. The act of the one without the other, cannot sever the tenancy. (*Beaumont's case,* 9 *Coke. Jackson* v. *Stevens,* 16 *Johns. Rep.* 115. *Doe* v. *Pearatt,* 6 *T. R.* 652.) Sir William Blackstone thus expresses it: "Husband and " wife being one person in the law, they cannot, during the " coverture, take separate estates ; and therefore upon a " purchase made by them both, they cannot be seised by " moieties, but both and each has the entirety." (*Green* v. *King,* 2 *Black. Rep.* 1214.) In *Rogers* v. *Grider,* (1 *Dana's Kentucky Rep.* 94,) the point was fully discussed. Judge Nicholas states, that the husband and wife hold by entireties. That the distinction is not ideal, but founded upon a substantial difference. One of the incidents of a joint tenancy, is the right to alien. Whereas it is agreed by all the authorities, that neither husband nor wife can, by the common law, make any alienation of an estate conveyed to them during coverture, so as to affect the entire right of the other on surviving. The unity of person subsisting between man and wife, in legal contemplation, prevents their receiving separate interests in an estate conveyed to them during coverture. On the death of one, the survivor takes no new estate or interest ; nothing that was not in him or her before. A similar course of reasoning is pursued in the elaborate argument of the court, in *Den* v. *Hardenburgh,* (5 *Halsted's Rep.* 42,) and in *Thornton* v. ———, (3 *Randolph,* 182.)

It is true that Mr. Preston says, (*On Estates,* vol. i, p. 132,) " in point of fact, and agreeable to natural reason, the husband and wife are distinct and individual persons ; and accordingly, when lands are granted to them as tenants in common, thereby treating them without any re-

spect to their social union, they will hold by moieties, as other distinct and individual persons would do." He cites 1 *Inst.* 187 b. only. I find nothing in the place referred to, bearing upon this position, unless it be the rule laid down, that if a man makes a lease to A., and to a *baron and feme ;* that is to A. for life, to the husband in tail, and to the feme for years, in this case it is said that each has a third part in respect to the severalties of their estates. In Mr. Preston's work *On Abstracts,* (vol. ii, p. 41,) he states this position more reservedly. " And even a husband and " wife may, by express words, (at least so the law is un-" derstood,) be made tenants in common, by a gift to them " during coverture."

In *Rogers* v. *Benson,* (5 *Johns. Ch. Rep.* 437,) Chancellor Kent holds, that the provision in our statute, that no estate in joint tenancy shall be held under any grant or conveyance, unless the premises were expressly declared to pass not in tenancy in common, but in joint tenancy, did not reach this case ; for the estate of the husband and wife was not a joint tenancy. So also he says, that they are neither joint tenants, nor tenants in common.

In *Barber* v. *Harris,* (15 *Wendell,* 617,) the terms of the deed were, to hold to the grantees as tenants in common. If the construction had been clear, that the husband and wife were tenants in common with the children, the case would closely have resembled the present. But though left undetermined, as not necessary to a decision, it seems clear that but a tenancy for life was created in them. See also *Jackson* v. *McConnell,* (19 *Wendell,* 176.)

Thus, then, if words were used, which by legal intendment would create a joint tenancy, in this instance they create this tenancy by entirety. If the *habendum* was express, that they should hold as joint tenants, still, I apprehend, the rule would apply. (Ch. J. Parsons, 5 *Mass.* 521.)

If then, where a grant is made, expressly or impliedly creating a joint tenancy, it cannot take effect as such, where the grantees are husband and wife, but one essential right attached to a joint tenancy, that of a separate alien-

ation, is prohibited, I cannot see what ground there is for holding, than if the conveyance is to them as tenants in common, another rule shall prevail. In truth, the doctrine seems to spring from a legal incapacity to take in severalty, arising from a legal identity; and a grantor cannot remove that incapacity without the intervention of a trustee.

I should also advert to the uninterupted possession of Mrs. Conrey, or of Meeks under her, from 1812, claiming title to the whole property, a strong fortification of the title; and upon the whole, I consider it free from all reasonable doubt.

There must be a decree for specific performance. The defendant must however have his costs up to the time of the tender to him of the executors deed; neither party to receive costs against the other of any subsequent proceedings.

As to interest and rents and profits, the general rule is to allow interest from the time when the contract should have been fulfilled and to give the purchaser the rents and profits. But this rule is subject to exception where the delay has been caused by the vendor. (*Esdaile* v. *Stephenson*, 1 *S. & St.* 123. *Paton* v. *Rogers*, 6 *Mad. Rep.* 256.)

I am of opinion, that the defendant may elect to take the rents and profits from the first day of June, 1836, to the first day of July, 1838, and pay interest upon the balance of his purchase money after deducting the deposite, or to be exempted from paying interest, leaving the vendors in reception of the rents. In either case he is to be charged with interest on such balance from the 1st of July, 1838, and to receive the rents and profits. The costs which are decreed to be allowed him may be taxed and deducted from the purchase money.

The decree of reference to a master must be drawn on these principles, and it is to be framed as near as practicable upon the precedent in *Seton on Decrees*, p. 152. Am. edition.