### FRANK A. BAKER v. MARY E. STEWART.

1. LAND, *Conveyed to Husband and Wife — Rights of Survivor.* A deed conveying real estate to a husband and wife conveys the same to them in entirety, and on the death of one, the survivor takes the entire estate.

2. RULE OF LAW — *No Statutory Change.* Neither the statutes relating to married women, nor the statutes relating to descents and distributions, nor any other statutes, have changed this rule of law with respect to the rights of the survivor.

*Error from Franklin District Court.*

THIS was an action brought by *Mary E. Stewart* in the district court of Franklin county, against *Frank A. Baker*, to recover damages for an alleged breach of certain covenants contained in a general warranty deed executed by Baker and wife to the plaintiff for certain lands situated in that county. Trial at the October term, 1886. A jury was waived, and the case was submitted to the court upon the following agreed statement of facts:

"1. Joshua Baker, being the owner in fee simple of the said land in controversy, on the 23d day of November, 1877, together with his wife Elizabeth, conveyed the same by deed of general warranty of that date, to Frank A. Baker and Alice Baker, which said deed was duly recorded May 9, 1881.

"2. At the time of said conveyance, said Frank A. Baker and Alice Baker were husband and wife, and resided in the state of Kansas.

"3. Prior to the 3d day of October, 1881, the said Alice Baker died, leaving surviving her as her heirs at law, her said husband and two children born of said marriage, to wit, Mary E. Baker, born in 1877, and Annie A. Baker, born in 1880; both of said children now residing with their said father.

"4. On the 3d day of October, 1881, the said Frank A. Baker and Okie Baker his wife, (said Frank having remarried,) conveyed by deed of general warranty the lands in controversy to the plaintiff, Mary E. Stewart, which deed was duly recorded on the 3d day of October, 1881.

"5. No conveyance, by order of the court or otherwise, has ever been made or obtained, to divest the interest of the said minor children in said lands, if any interest said children inherited from their said mother, Alice Baker; and it is agreed that the only question in this case is, upon the death of said Alice Baker, did the surviving husband, Frank A. Baker, inherit the entire estate, or did the said children of Alice Baker inherit any interest in said premises."

Upon this agreed statement of facts, the court below rendered judgment in favor of the plaintiff and against the defendant for the sum of $800 and costs of suit. To reverse this judgment, the defendant, as plaintiff in error, brings the case to this court.

*William H. Clark*, for plaintiff in error.

*C. B. Mason*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: It appears that on November 23, 1877, Joshua Baker and his wife Elizabeth Baker, who owned certain real estate in Franklin county, conveyed the same by a general warranty deed to their son Frank A. Baker and his wife Alice Baker, which deed was duly recorded. Afterward, and prior to October 3, 1881, Alice Baker died, leaving surviving her her husband, and two children born during the marriage. Upon these facts, and some others not necessary to mention, the main question arising in the case, and the one now presented to this court, is whether, on the one side, the foregoing deed conveyed the foregoing real estate to Frank A. Baker and his wife as *tenants in common*, or whether, on the other side, it conveyed it to them as *joint tenants* or *tenants in entirety*. If the deed conveyed the land to Frank A. Baker and his wife as tenants in common, then the decision of the court below is correct, and must be affirmed; but if it conveyed it to them either as joint tenants or as tenants in entirety, then such decision is admitted to be erroneous. The real question, stated more explicitly, is this: At the death of Alice Baker, who took the foregoing real estate? Did Frank A. Baker, as the survivor of the two, and as one of two joint tenants or tenants in entirety, take the whole of the estate, or did he, as a tenant in common with his wife, take only the one-half thereof, and leave his wife's heirs to take the other half? No question has ever been presented in this case as to who had the right to control the property during the joint lives of Frank A. Baker and his wife, or whether either, or both together, could have legally sold the same, or any interest therein, during that time. These matters, however, will be considered to some extent hereafter. We suppose it will be admitted that a deed might be executed to a husband and wife which would convey to them, if the language of the deed

explicitly said so, any one of the foregoing estates — that is, an estate *in common*, or a *joint tenancy*, or a *tenancy in entirety* — for such has always been the law, and property owners can generally convey their property just as they please.

Walker, J., however, in the case of *Smith v. Smith*, 30 Ala. 642, 643, used the following language:

"The reason why, under a conveyance to husband and wife, they did not take either as joint tenants or tenants in common, is, that they were, according to the principles of the common law, incapable of so taking."

Mr. Bishop, in his work on Married Women, volume 2, § 285, criticises this language as follows:

"Let us pause to say that the majority of *legal persons* would probably deny this proposition of the learned judge; because, as we saw in the first volume, [vol. 1, §§ 616, 618,] husband and wife, if they were joint tenants or tenants in common before marriage, continue to be the same after marriage, and do not become tenants by the entirety of the estate, which shows them to be capable of holding as tenants in common or as joint tenants; and it is perhaps the better doctrine at the common law, that a conveyance to them after marriage may, by express words, create in them either of these two tenancies."

Mr. Washburn, in his work on Real Property, volume 1, p. *425, uses the following language:

"It is always competent, however, to make husband and wife tenants in common, by proper words, in the deed or devise by which they take, indicating such an intention."

Chancellor Kent, in his Commentaries, volume 4, p. *363, uses the following language:

"It is said, however, to be now understood that husband and wife may, by express words, be made tenants in common by a gift to them during coverture."

(See also *McDermott v. French*, 15 N. J. Eq. 78, 80.) Certainly a husband and wife may be made tenants in common by a separate deed to each, conveying to each a separate moiety of the estate. This may also be accomplished by a separate conveying clause as to each in the same deed; and certainly no good reason can be given why the same thing might not

be accomplished by any express words in a single deed executed to the two together, showing the intention of the parties to be that the husband and wife should take the estate as tenants in common; but it would require express words, or words strongly implying such an intention. Without such words, the estate conveyed would be an estate in entirety. We suppose it will also be admitted that the deed in the present case would at common law have conveyed the property *in entirety* to Frank A. Baker and his wife, Alice Baker, and would not have conveyed it to them as *ordinary joint tenants* or as *tenants in common*. We suppose it will also be admitted that if the deed in the present case conveyed the estate to Frank A. Baker and his wife, either in entirety or as joint tenants, then that Frank A. Baker, as the survivor of the two, was, at the death of his wife, entitled to the land, and the defendant in error, plaintiff below, should not recover in this action. But if the deed did not so convey such estate, and conveyed the same to Baker and wife purely, solely and entirely *as tenants in common*, then the plaintiff in error, defendant below, was not, at the death of his wife, entitled to the land, and the defendant in error, plaintiff below, should recover in this action. Almost all authority is in favor of the theory that such deed conveyed an estate in entirety to Frank A. Baker and wife, and that he, as the survivor of the two, was, at the death of his wife, entitled to the entire estate. Among the decided cases supporting this view of the case are the following: *Myers v. Reed,* (U. S. C. C. of Ore.) 17 Fed. Rep. 401; *Gibson v. Zimmerman,* 12 Mo. 385; *Garner v. Jones,* 52 id. 68; *Hall v. Stephens,* 65 id. 670; *Robinson v. Eagle,* 29 Ark. 202; *Harding v. Springer,* 14 Me. 407; *Brownson v. Hull,* 16 Vt. 309; *Shaw v. Hearsey,* 5 Mass. 520; *Fox v. Fletcher,* 8 id. 274; *Draper v. Jackson,* 16 id. 480; *Wales v. Coffin,* 13 Allen, 213; *Pierce v. Chace,* 108 Mass. 254; *Pray v. Stebbins,* 141 id. 219; same case, 55 Am. Rep. 462; *Bertles v. Nunan,* 92 N. Y. 152; same case, 44 Am. Rep. 361; *Zorntlein v. Bram,* 100 N. Y. 12; *Kip v. Kip,* 33 N. J. Eq. 213; *Buttlar v. Rosenblath,* 42 id. 651; same case, 9 Atl. Rep. 695; *Bates v. Seely,* 46 Pa. St. 248; *Diver*

*v. Diver,* 56 id. 106; *French v. Mehan,* 56 id. 286; *McCurdy v. Canning,* 64 id. 39; *Fleek v. Zillhaver,* 117 id. 213; same case, 12 Atl. Rep. 420; *Hannan v. Towers,* 3 Harr. & J. (Md.) 147; *Marburg v. Cole,* 49 Md. 402; same case, 33 Am. Rep. 266; *Den v. Whitemore,* 2 Dev. & B. (N. C. L.) 537; *Den v. Branson,* 5 Ired. (N. C. L.) 426; *Woodford v. Higly,* (1 Winst. 237,) 60 N. C. 234; *Doe v. Garrison,* 1 Dana (Ky.) 35; *Banton v. Campbell,* 9 B. Mon. 587, 594; *Babbitt v. Scroggin,* 1 Duv. (Ky.) 272; *Taul v. Campbell,* 7 Yerg. (Tenn.) 319; *Ames v. Norman,* 4 Sneed (Tenn.) 683; *Berrigan v. Fleming,* 2 Lea (Tenn.) 271; *Hemingway v. Scales,* 42 Miss. 1; same case, 2 Am. Rep. 586; *McDuff v. Beauchamp,* 50 Miss. 531; *Allen v. Tate,* 58 id. 585; *Ketchum v. Walsworth,* 5 Wis. 95; *Bennett v. Child,* 19 id. 362; *Fisher v. Provin,* 25 Mich. 347; *Ætna Ins. Co. v. Resh,* 40 id. 241; *Manwaring v. Powell,* 40 id. 371; *Jacobs v. Miller,* 50 id. 119; *Bevins v. Cline,* 21 Ind. 37, 41; *Davis v. Clark,* 26 id. 424; *Arnold v. Arnold,* 30 id. 305; *Falls v. Hawthorne,* 30 id. 444; *Simpson v. Pearson,* 31 id. 1; *Chandler v. Cheney,* 37 id. 391; *Barnes v. Loyd,* 37 id. 523; *Jones v. Chandler,* 40 id. 588; *Anderson v. Tannehill,* 42 id. 141; *Hulett v. Inlow,* 57 id. 412; same case, 26 Am. Rep. 64; *Patton v. Rankin,* 68 Ind. 245; same case, 34 Am. Rep. 254; *Carver v. Smith,* 90 Ind. 222; same case, 46 Am. Rep. 210.

On the side of the defendant in error, cases are cited from Iowa, Illinois and New Hampshire, which are relied on as supporting the opposite view of the case. But these cases were decided under special statutes, and therefore are not authority at all. Under such statutes there could not be any joint tenancy or tenancy by entirety, *but only a tenancy in common,* and therefore the decisions in those states could not have been otherwise than as they were. The statute of Iowa upon this subject reads as follows:

"Sec. 1939. Conveyances to two or more, in their own right, create *a tenancy in common,* unless a contrary intent is expressed." (McClain's Annotated St. of Iowa, 1882, § 1939.)

The statute of Illinois upon this subject reads as follows:

"Sec. 5. No estate in joint tenancy, in any lands, tenements,

or hereditaments, shall be held or claimed under any grant, devise, or conveyance whatsoever, heretofore or hereafter made, other than to executors and trustees, unless the premises therein mentioned shall expressly be thereby declared to pass, *not in tenancy in common*, but in joint tenancy; and every such estate, other than to executors and trustees, (unless otherwise expressly declared as aforesaid,) *shall be deemed to be in tenancy in common.*" (Starr & C. Annot. St. of Illinois, 1885, p. 571, ch. 30, ¶ 5.)

The statute of New Hampshire upon this subject reads as follows:

"SEC. 14. Every conveyance or devise of real estate made to two or more persons shall be construed to create an *estate in common* and not in joint tenancy, unless it shall be expressed therein that such estate is to be holden by the grantees or devisees as joint tenants, or to them and the survivor of them, or other words are used clearly expressing an intention to create a joint tenancy.

"SEC. 15. Joint heirs shall be deemed *tenants in common.*" (General Laws of New Hampshire, 1878, p. 325, ch. 135, §§ 14, 15.)

It seems to be admitted that at common law the deed in the present case would convey an estate in entirety to Frank A. Baker and his wife, but it is claimed that the rule of the common law has been changed by our statutes. No statute, however, has been referred to, nor can any statute be found

2. Rule of law— no statutory change.

that enacts directly that such a deed should not convey such an estate. Indeed, there is no statute that pretends in direct terms to change or modify. the common law in any particular with respect to such a deed. It is claimed, however, that the married woman's act by indirection or impliedly changes or modifies this rule of the common law. Now, how such act changes or modifies the rule of the common law in this regard, it is difficult to understand. That act was passed by the legislature, presumably, for the benefit of married women, and not to take away from them any of their rights or privileges. Now nine-tenths of the married women of this country are younger than their husbands. And the life tables, wherever they state the expectancy

of life for males and females separately, show that the expectancy of life for women is greater than that for men of the same age and health. See especially Dr. William Farr's tables in any volume of the American Almanac from 1879 up to the present time. Hence, in the great majority of instances married women must survive their husbands. Now if the married woman's act transforms an estate in entirety into an estate in common, then it will, in a great majority of instances, *divest* married women of one-half of their estates. Without the act, a married woman, holding with her husband an estate in entirety, would, when he dies, (if she survives him,) take the entire estate; but with the act, if it is to be construed as the defendant in error would desire to have it construed, she would take under such circumstances only one-half of the estate, and must *lose* the other half. As will be shown hereafter, however, this act has nothing to do with the *estate* which either the husband or the wife shall hold, but only with the possession, control and enjoyment by married women of their own separate property, of estates which they in fact own. For the purposes of this case it will be admitted, and it is our opinion that under the statutes of this state relating to married women, they have all the rights, powers and privileges that married men have, and may control their separate property, and buy and sell and trade and traffic to the same extent that married men may, and with like effect and consequences. But none of these things affect this case. It will be admitted that Alice Baker, while living, had the right to control the real estate in question to the same extent that her husband, Frank A. Baker, had; but that does not affect this case in the least. It does not determine what estate of inheritance passed from Joshua Baker and wife to Alice Baker or to Frank A. Baker. It only determines that each had during their joint lives an equal right to control the estate that did in fact pass. The estate that did in fact pass was an estate for life to each of them, with a contingent estate in fee simple, or of inheritance to each of them, the latter estate depending upon

29—40 KAS.

the contingency as to which should outlive or survive the other. So long as each lived, each had the right to possess and enjoy the entire estate; but when one died, the other took the entire estate. Undoubtedly, such an estate could have been created by the deed from Joshua Baker and wife to them, if the deed had *expressly* said so, and under all the authorities the deed that was actually executed would at common law have conveyed just such an estate as conclusively and certainly as though it had expressly said so. And nearly all the authorities hold that the statutes relating to married women, and giving to them the right to control and manage their own separate property, do not in the least affect the question as to what estate passes by a deed to a husband and wife, or what either shall take on the death of the other, and these authorities hold that such estate is still one of entirety. Among the authorities to this effect we would cite the following: *Diver v. Diver*, 56 Pa. St. 106, 109; *McCurdy v. Canning*, 64 id. 39, 41; *Kip v. Kip*, 33 N. J. Eq. 213; *Buttlar v. Rosenblath*, 42 id. 651; same case, 9 Atl. Rep. 695; *Chandler v. Cheney*, 37 Ind. 391, 412, *et seq.*; *Carver v. Smith*, 90 id. 222; same case, 46 Am. Rep. 210; *McDuff v. Beauchamp*, 50 Miss. 531; *Fisher v. Provin*, 25 Mich. 347; *Robinson v. Eagle*, 29 Ark. 202; *Bertles v. Nunan*, 92 N. Y. 152; same case, 44 Am. Rep. 361; *Zorntlein v. Bram*, 100 N. Y. 13; *Marburg v. Cole*, 49 Md. 402; same case, 33 Am. Rep. 266; *Bennett v. Child*, 19 Wis. 362. See also 2 Bish. Mar. Wom. §§ 284 to 289. In the case of *Buttlar v. Rosenblath*, 42 N. J. Eq. 651, (decided in 1887,) same case, 9 Atl. Rep. 695, it is decided as follows:

"1. A conveyance of land, since the passage of the married woman's act of 1852, to husband and wife, *does not create a tenancy in common.*

"2. That act endows the wife with the capacity, during the joint lives, to hold in her possession, as a single female, one-half the estate in common with her husband; *the right of survivorship still exists as at common law.*

"3. To constitute a tenancy in common between husband

*(margin note: 1. Land, conveyed to husband and wife—rights of survivor.)*

and wife there must be in the conveyance an expression of an intention to do so."

In the case of *Diver v. Diver*, 56 Pa. St. 106, 109, Mr. Justice Strong, who was afterward one of the justices of the supreme court of the United States, in delivering the opinion of the court, used the following language:

"But it is said the act of 1848, by destroying the legal unity of the husband and wife, has converted such an estate into a tenancy in common; that is, that such a deed conveys a different estate from that which the same deed would have created, if made prior to the passage of the act. To this we cannot assent. It mistakes alike the letter and the spirit of the statute, imputing to it a purpose never intended. The design of the legislature was single. It was not to destroy the oneness of husband and wife, but to protect the wife's property by removing it from under the dominion of the husband. To effectuate this object, she was enabled to own, use and enjoy her property, if hers before marriage, as fully after marriage as before. And the act declared that if her property accrued to her after marriage, it should be owned, used and enjoyed by her, as her own separate property, exempt from liability for the debts and engagements of her husband. All this had in view the enjoyment of that which is hers, not the force and effect of the instrument by which an estate may be granted to her. It has nothing to do with the nature of the estate. The act does not operate upon rights accruing to her until after they have accrued. It takes such rights of property as it finds them, and regulates the enjoyment; that is, the enjoyment of the estate after it has vested in the wife. And the mode of authorized enjoyment is significant. It is to be as her separate property is enjoyed, as property settled to her separate use. The act therefore no more destroys her union with her husband than does a settlement of property for her separate use. To a certain extent she is enabled, but no more than is necessary, to protect her property after it has been acquired. We have held that she can convey her lands only by joining in deed with her husband. (*Pettit v. Fretz*, 9 Casey, 118.) This is a clear recognition of the existing unity of the two. It need not be repeated that no greater effect is to be given to the act of 1848 than its language and spirit demand. It is a remedial statute, and we construe it so as to suppress the mischief against which it is aimed, but not as

altering the common law any further than is necessary to re-move that mischief. To hold it as operating upon the deed conveying land to a wife, making such deed assure a different estate from what it would have assured without the act, is to lose sight of the legislative purpose. Were we to do so, it would become in many cases a means of divesting her of her property, instead of an instrument of protection. In the present case, if it has converted the estate granted to Diver and his wife into a tenancy in common, it has taken from her her ownership and enjoyment of the entirety during her husband's life and her right of survivorship to the whole."

The case of *Carver v. Smith*, 90 Ind. 222; same case, 46 Am. Rep. 210, is a late case, and equally explicit upon this subject. And see also the latest New York cases upon this subject.

As we have before stated, the question as to who had the control of this property, or how it should be controlled while Alice Baker was alive, is not a question in this case. The only question in this case is, who took the property after her death? But suppose that this question shall nevertheless be considered. The right or privilege or power of the husband, at common law, to control the use of the wife's real estate was never any part of *the estate* held by either, but was always simply a right or privilege or power growing out of and founded upon the marriage relation. At common law the husband had such right of control over *all* the wife's real estate, and not merely over such of her real estate as was held by the two in entirety. Now cannot this right to the control of the wife's real estate be changed by statute without abolishing or destroying the nature of the estate held by the husband or the wife, or both, the inheritance? Nearly all the authorities say that this may be done. May not the common law upon any given subject be amended or altered by statute without wholly destroying the entire common law upon that subject? May not the common law on any subject be altered in part and left in force in part? The common law in this state has probably been so amended that the husband and wife have an equal right to control all the land which they own in entirety,

but in other respects the estate of entirety is probably precisely the same as it was before the statutes relating to married women took effect. With this change in the right of the husband to control the real estate owned by his wife or by him and her in entirety, the estate of entirety has become more like the ordinary estate of joint tenancy, though it is not yet strictly like such an estate. It does not matter in this case, however, which of these two estates the present is or was. If it was either an estate in entirety or an estate in joint tenancy, then the claim of the defendant in error is untenable. The claim of the defendant in error is tenable only upon the theory that the estate in the present case was one of pure tenancy in common.

It is also urged, faintly, but still urged, that the statutes relating to descents and distributions have transformed the estate in entirety into an estate or tenancy in common. How this has been done, however, is not made plain. It is difficult to understand just how any person may transmit to another, by death or otherwise, more than such first-mentioned person ever owned. Only a descendible estate can pass to an heir. In estates in entirety held by a husband and wife, each owns a life estate in the entire property, but the statutes relating to descents and distributions do not pretend to affect such estates. They do not enact that a life estate shall pass to an heir, and of course such an estate cannot. Each (the husband or wife) also owns a contingent estate in fee simple in the entire estate based upon the survivorship of one as to the other. The survivor takes the whole estate, and the heirs of the other take nothing. The one who dies first renders it utterly impossible for the contingency of survivorship on that one's part, the contingency upon which that one's inheritable estate is founded, ever to take place, and renders it utterly impossible for that one ever to obtain any inheritable interest in the property, or any interest which could by any possibility be transmitted to heirs. By that one's death that one's contingent inheritable estate is ended and determined, and ended and determined before any absolute inheritable estate ever be-

came vested in him or her, and hence that one, at his or her death, could have nothing which could be transmitted to heirs. There have always been laws in all the states with reference to descents and distributions, and yet it has never before been supposed that such laws prevented or hindered the creation of estates in entirety. Nearly all the courts hold that estates in entirety may still exist, and may be created by an ordinary deed of general warranty to the husband and wife, and such estates are no more against our present laws in Kansas relating to descents and distributions than such estates have always been against all other laws concerning descents and distributions in this and other states. So far as the homestead is concerned, our laws concerning descents and distributions recognize the right of the survivor, either the husband or the wife, and in whosesoever name the title may be vested, to occupy such homestead, and the whole of it, after the death of the other. (See act concerning descents and distributions, §§ 2, 28.) The homestead is a kind of "community" property. No other statutes have been referred to as abolishing estates in entirety, and we think there are none.

Under the facts of this case we think that Frank A. Baker as the survivor of his wife Alice Baker is entitled to the entire estate, and that no part of the estate passed to her heirs.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the defendant below and against the plaintiff below for costs.

JOHNSTON, J., Concurring.

HORTON, C. J., dissenting: At common law, where real property was conveyed to the husband and wife by deed, both husband and wife were seized of the estate thus granted *per tout, et non per my* (by the whole, and not by a part), as one person, and not as joint tenants, or tenants in common. The survivor becomes sole seized of the entirety of the estate. The reason why, under a conveyance to husband and wife, they did not take, either as joint tenants or tenants in common,

was that they were, according to principles of the common law, incapable of so taking. The authorities fully sustain this statement of the reasons on which the common-law rule, prescribing the effect of a conveyance to husband and wife, is founded. Littleton, after stating the rule, says that "the cause is, for that the husband and wife are one person in law." (2 Co. Litt. 187*a*.)  Blackstone says that, "husband and wife being considered as one person, they cannot take the estate by moieties, but both are seized of the entirety." (2 Bl. Com. 182.)  Chancellor Kent says: "They are not properly joint tenants, nor tenants in common; for they are but one person in law, and cannot take by moieties."  "This species of tenancy arises from the unity of husband and wife." (2 Kent's Com. 132.)  So with the adjudged cases: they all proceed, not on any supposed intention of the parties to the conveyance, but on the sole ground of the incapacity of husband and wife, who are regarded as one person in law, to take "during coverture separate estates in property which is conveyed to both of them." (*Green v. King*, 2 W. Bl. 1211; *Jackson v. Stevens*, 16 Johns. 115; *Ames v. Norman*, 4 Sneed, 692; *Barber v. Harris*, 15 Wend. 617; *Stuckey v. Keefe*, 26 Pa. St. 397; *Rogers v. Benson*, 5 Johns. Ch. 437; *Pollard v. Merrill*, 15 Ala. 174; 4 Kent's Com. 362; 1 Greenl. Cr. 363, §§ 44, 45; 1 Thomas's Coke, note, p. 741; Bell on Property of H. & W., 396; *Bredon's Case*, 1 Coke's R., 193, note to Thomas & Fraser's ed.)  In accordance with this view it has been held, and upon reasoning entirely conclusive, that husband and wife cannot, at common law, by any words in a grant to them during coverture, be made either joint tenants, or tenants in common. (*Stuckey v. Keefe*, 26 Pa. St. 397; *Johnston v. Hart*, 6 Watts & S. 319; *Dias & Burn v. Glover*, 1 Hoff. Ch. 71.) Therefore the statement in the opinion that, under the rule of the common law, a deed might be executed to a husband and wife which would convey to them an estate in common, or in joint tenancy, is not only not admitted, but is against the great weight of authority; and I might say against all reported English cases but a single one, upon which text-writers and

one court, in attempting to defend estates in entirety, have built largely. (See *Stuckey v. Keefe*, supra, and the authorities there cited.)

As a strong illustration that estates in entirety are not applicable to our society and institutions, I cite *Dias & Burn v. Glover*, 1 Hoff. Ch., supra. In that case the conveyance was made to "J. C. and P. C. his wife, as tenants in common and in equality of estate, and not as joint tenants." Notwithstanding the purpose and intention of all the parties to the conveyance, it was decided that under the common law the conveyance was not permitted to have any operation in creating a tenancy in common. The words "as tenants in common" and "in entirety of estate, and not as joint tenants" were rendered nugatory by the incapacity of the husband and wife under the common law to take as tenants in common.

One of my objections to establishing or recognizing estates in entirety in this state is, that it is not in consonance with our laws that the intention of the parties to a conveyance to a husband and wife cannot have any operation. The adoption of estates in entirety determines the incapacity of husband and wife to take either as joint tenants or tenants in common. (2 Kent's Com. 132; 4 Kent's id. 362.) There are citations in the opinion from Bishop, Washburn, and Chancellor Kent, attempting to support the rule that even at common law it is competent to make husband and wife tenants in common, by proper words in the deed or devise by which they take. The case of *McDermot v. French*, 15 N. J. Eq. 78, is also referred to for the same reason. The citation from Bishop is based upon *Wales v. Coffin*, 13 Allen, 213, and the New Jersey case of *McDermot v. French*, supra, and one English case referred to in 1 Preston on Estates, 132, and also in 2 Preston on Abstracts of Title, 41. The Massachusetts case decides that "by common law, a deed or devise to husband and wife creates one indivisible estate in them both, and the survivor of them; not because of their supposed incapacity to hold in moieties, but because such being presumed to be the intention of the parties, the law holds the estate to be limited accordingly."

This last conclusion of the decision is contrary to Blackstone and all the other common-law authorities.   The English case in 2 Preston on Abstracts of Title, 41, is the authority for the citation from Kent.   Washburn gives as his authority the New Jersey case only.   The New Jersey case is founded upon the citation from Kent and the English case in Preston.   The assistant vice-chancellor, in *Dias v. Glover*, supra, very conclusively questions the solidity of Mr. Preston's opinion.   He observes:

"It is true that Mr. Preston says, (1 Prest. Est. 132,) 'In point of fact, and agreeable to natural reason, the husband and wife are distinct and individual persons; and accordingly, when lands are granted to them as tenants in common, thereby treating them without any respect to their social union, they will hold by moieties as other distinct and individual persons would do.'   He cites 1 Inst. 187*b*, only.   I find nothing in the place referred to bearing upon this position, unless it be the rule laid down, that if a man makes a lease to A., and to a baron and *feme*—that is, to A. for life, to the husband in tail, and to the *feme* for years—in this case it is said that each has a third part in respect to the severalties of their estates.   In Mr. Preston's work on Abstracts, (vol. 2, p. 41,) he states this position more reservedly: 'And even a husband and wife may, by express words, (at least so the law is understood,) be made tenants in common, by a gift to them during coverture.'"

Therefore the citations from Bishop, Washburn, Kent, and the New Jersey Report are virtually based upon the single English case, which is contrary to all the English and common-law decisions, and is not held by Vice-Chancellor Hoffman as good authority.   If it be conceded that a conveyance can be made to husband and wife under the common law by proper words so as to create them tenants in common, then the reason on which the rule of an estate in entirety was founded has ceased to exist, and there being no reason for the rule, such estate should not be adopted or recognized; "for," says Blackstone, "husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seized of the entirety, *per tout, et non per my.*"

Again, as one of the reasons for the recognition of estates

in entirety, it is suggested in the opinion that such a rule is beneficial to married women, because the life-tables show the expectancy of life for women is greater than for men of the same age and health. In this case the wife, Mrs. Alice Baker, died before her husband, and it will be no satisfaction to her children to be informed that they are denied the right to inherit any part of the estate their mother had in her property in her lifetime, because as a general rule estates in entirety do not take away from married women their rights or privileges. This denial of inheritance in my opinion is in conflict with ch. 33, Comp. Laws of 1885, being the act relating to descents and distributions. Section 28 of that chapter reads:

"All the provisions hereinbefore made in relation to a widow of a deceased husband shall be applicable to the husband of a deceased wife. Each is entitled to the same rights or portion in the estate of the other, and like interests shall in the same manner descend to their respective heirs. The estates of dower and by curtesy are abolished."

And section 29 reads:

"   .   .   .   Children of a deceased parent inherit in equal proportions the portion their father or mother would have inherited if living." (See also the other sections of said ch. 33.)

But I do not accept the conclusion announced, that estates in entirety are beneficial to married women, on account of the life-tables. While some of these tables show that the expectancy of life for women, including married and single, is greater than that for men, all of the tables show that from the age of ten to thirty-five the female rate of mortality exceeds the male. (10 Chambers's Encyc., p. 2.) It is also shown by the experience of assurance offices, that while female annuitants are longer lived than male, female assured lives are no better. (Id.) The majority of women who ever marry are married before they reach the age of thirty-five — the greater number under thirty; therefore, the life-tables do not show conclusively that the expectancy of life for wives is greater than that for men. The ratio of male to female mortality differs considerably at different ages.

A very large number of decided cases is cited as supporting estates in entirety. These authorities, however, are not to be accepted as conclusive in this state: First, the constitution and statutes of Kansas are more liberal than those of many states in recognizing the rights and privileges of women. Second, the courts generally have been very slow in conceding the wife to be the companion and equal of the husband, and entitled to enjoy equally with him the rights of property. Under the ancient doctrine of the common law, where estates in entirety originated, the husband and wife were not only one person in law, but the very being or legal existence of the woman was suspended during the marriage, or at least was incorporated and consolidated into that of the husband, under whose wing, protection and cover she performed everything; and is therefore called in law-French a *feme-covert*—*fœmina viro co-operta*—and was said to be *covert-baron*, or under the protection and influence of her husband, *her baron*, or lord; and her condition during her marriage was called her *coverture*. (1 Cooley's Bl., 3d. ed., 442.)

In this state a husband and wife are two independent persons; and the husband has no more immediate interest or control over the property of the wife than any other person. Our system of marriage literally implies the equality of the husband and wife; the integrity and individuality of each; the mutual obligation in which love and duty find no bondage; the division of labor; and the multiplication and sharing of happiness.

"Marriage involves neither the assumption of indebtedness nor the acquisition of property; a married woman may contract and be contracted with concerning her separate real and personal property, sell, convey, and incumber the same; sue and be sued without reference thereto, in the same manner, and to the same extent, and with like effect, and as freely as any other person may in regard to his or her real or personal property. She may purchase property from her husband, perform labor and services on her sole and separate account, and make the earnings therefrom her sole and separate property; she has the same control of her person and property as her husband; she has the same right as to the nurture, education

and control of her children, and also the same rights in the
possession of the homestead. (*Knaggs v. Mastin*, 9 Kas. 532;
*Tallman v. Jones*, 13 id. 438; *Going v. Orns*, 8 id. 85; *Larimer v. Kelley*, 10 id. 298; *Butler v. Butler*, 21 id. 526.)    She
may participate in all city elections, attend caucuses, nominate
candidates, and vote for such persons and principles as her
judgment dictates.    In fact, in Kansas a woman is in nearly
all matters accorded civil and political equality with man; she
is not his servant nor his slave." (*The State v. Walker*, 36
Kas. 311.    See ch. 62, Comp. Laws of 1885.)

Then again, this court heretofore has been fearless in disregarding doctrines founded upon circumstances peculiar to England, but not applicable to the society and institutions of this
country.    In *Simpson v. Mundee*, 3 Kas. 172 — as far back
as 1865 — this court wiped out the "indescribable myth,"
known as the "English vendor's lien," although the great
weight of authorities, under the common law, recognized and
enforced it.    In *Norris v. Corkill*, 32 Kas. 409, notwithstanding the numerous decisions of various states that the husband
is liable for the torts of his wife, under the common law, this
court held that, considering the liberal provisions of the statutes regarding married women, the common-law rule was
changed, and that the husband was not liable for slanderous
words spoken by his wife.    In *Butler v. Butler*, 21 Kas. 521,
the writer of that opinion inclined to the belief that notwithstanding the great weight of authority under the common law,
a voluntary conveyance by a woman just prior to her marriage, without the knowledge of the husband, was not a fraud
upon his marital rights.    This upon the ground that the rights
and privileges of married women have been so changed by the
laws of the state, from the common law, that the reason for
any such rule failed, and therefore the rule itself ceased.

The case of *Diver v. Diver*, 56 Pa. St. 106, in which the
opinion was written by Mr. Justice Strong, afterward one of
the justices of the supreme court of the United States, is
strongly relied upon.    That decision, however, is founded upon
the case of *Pettit v. Fretz*, 9 Casey, 118, where the married-
woman's act of Pennsylvania is construed as not to give the

wife the absolute right to dispose of her estate as a *feme sole*. To show that the decision is not applicable to our state, I merely quote a part of the opinion:

"If the married-woman's act of April 11, 1848, were literally interpreted, we could not fail to see that it would work a repeal of our old statutes of conveyancing, which the legislature had exhibited no intention to repeal; that it would change the law of actions; that it would expose wives continually to the hazards of barter and business without that aid and protection which the common law entitled her to receive from her husband; that it would dethrone him from the headship of the family, take her thoughts and time from the care of the family, and introduce confusion and discord, which would in their turn entail upon the public evils tenfold greater than those which the statute was intended to remedy. . . . The marriage relation is the foundation of our social organization. If we are not to stand by the 'ancient landmarks' while the legislature leaves them untouched — if, taking the words of the enactment, we are to run them out into all possible constructions, however attenuated and however remote from the great central idea — we shall substitute a judicial system of concubinage in Pennsylvania for the common-law relation of marriage; for so soon as the material interests of the relation are severed at all points and for all purposes, marriage will become a mere partnership of convenience, to be formed and dissolved like other partnerships when the partners think they can do better for themselves."

Therefore the decision of *Diver v. Diver*, when construed in connection with the decision of *Pettit v. Fretz*, supra, therein referred to, is no authority for this court to follow. This court, unlike the Pennsylvania courts, has never dwarfed or limited by construction the statutes respecting the rights of married women, for fear —

"That it would dethrone the husband from the headship of the family, take the thoughts and time of the wife from the care of the family, and introduce confusion and discord, which would in their turn entail upon the public evils tenfold greater than those which the statutes were intended to remedy."

The statute concerning the common law reads:

"The common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, shall remain in force in aid of the general statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state; but all such statutes shall be liberally construed to promote their object." (Comp. Laws of 1885, ch. 119, § 3.)

In this state, as I have already shown, the statutes and decisions recognize the separate existence of the wife, her separate property, her separate contracts, and her separate suits. Therefore the nice distinction created in the ancient books of estates in entirety, are not, in my opinion, in line with our constitutional and statutory law, judicial decisions and the condition and wants of the people. In the language of the old Massachusetts statute, (1785, ch. 62,) "Tenancies in common are more beneficial to the commonwealth and more in consonance with the genius of republics."

In 1 S. W. Syst. 272, Judge Swift remarks that the odious and unjust doctrine of survivorship was never adopted in his state.

In my view I am supported by the decisions of many strong and able courts. In *Cooper v. Cooper*, 76 Ill. 57, it was said that—

"Under the legislation of this state, giving married women the right to acquire property, and hold the same free from their husband's control, the reason for the rule which holds that a conveyance to husband and wife makes them tenants by the entirety with right of survivorship, has ceased to exist, and they will, in this state, take and hold as tenants in common."

In *Hoffman v. Stigers*, 28 Iowa, 302, it was held that—

"Under our law joint tenancies, and in entirety, are not favored, and a conveyance to two or more persons in their own right creates a tenancy in common, unless a contrary intent is expressed, and this rule, under our statute, applies to a conveyance, whether by judgment or deed, vesting the estate in a husband and wife jointly."

In the opinion in that case, it was also said :

"And as the courts in most of the states condemn entailments, or perpetuities, so we do and should joint tenancies, or at least their common-law incident—the right of survivorship."

In *Clark v. Clark*, 56 N. H. 105, it was decided that tenancies by entirety became inoperative by the passage of the act of 1860, in relation to married women. In that opinion it was said :

" It appears that the testator died in 1862, after the act in regard to the estates of married women took effect, whereby married women, so far as their property not derived from their husbands was concerned, became practically endowed with · the rights and subject to the liabilities of unmarried women. That mysterious joint tenancy in which the subtle genius of the English real law so much delighted itself, where the tenants took not *per my et per tout*, but by entireties, could no longer arise. The existence of a married woman, so far as her property is concerned, is no longer by our law merged in that of her husband, but she has become a separate being, endowed, so far as her separate estate is concerned, with the powers and subjected to the liabilities of unmarried women."

In *Walthall v. Goree*, 36 Ala. 728, the syllabus reads:

"At common law, under a devise to husband and wife during coverture, the entire estate vested in both of them as one person, and on the death of either, continued in the survivor; but under the statutes of this state creating and regulating the separate estates of married women, ( Code, §§ 1981–1997,) such devise creates the same estate in the parties as if it had been made before coverture; on the death of the wife intestate, her undivided moiety descends to her heirs-at-law, subject to the statutory rights of her surviving husband during his life; and on the subsequent death of the husband, the wife's heirs become entitled to the possession of her undivided moiety."

In that opinion it was said :

"Article 3, chapter 1, title 5, part 2 of the code, relates expressly to separate estates of married women. ( Code, p. 380.) The seventeen sections which compose that article embody the principles of a new policy with reference to married women, which was unknown to the common law. (*Smith v. Smith*, 30 Ala. 643.) One of the principles embodied in the provisions

of the code here referred to is, that the distinct existence of the wife as a legal person is so far recognized as to enable her to take an estate separate from her husband. (Code, §§1982, 1983, etc.)"

In *Whittlesey v. Fuller*, 11 Conn. 337, I find the following language:

"But it is said that although this estate has all the incidents of a joint tenancy, yet that the relation of husband and wife is such that they cannot receive an estate by moieties, but that each must be seized of the entirety, and of course that no part of the property so held can be conveyed by one of them. And that such is the doctrine of the English books cannot be doubted.   Husband and wife cannot take by moieties, during the coverture; and he has no power to sever the jointure, nor to dispose of any part of the land.  .  .  .   And the reason given is, that husband and wife are one.   If that were the real reason, it is very difficult to see why a deed to the wife would not be in effect a deed to the husband and wife, and *vice versa;* .  .  .   but in Connecticut we cannot learn that it was ever recognized as a law of our state.   On the contrary, so far as we are informed, deeds or devises of lands to husband and wife have been considered as vesting the estate conveyed in the same manner as to other persons.   The wife having a separate existence, so as to be able to take by a deed to herself, her identity has not been considered as destroyed, from the fact that the conveyance was to her and to her husband, by one and the same instrument.   Estates have been, as we believe, frequently and so far as we are informed, uniformly, settled upon that principle; and although no adjudged case has been shown upon this subject, this practical construction is in such strict accordance with the common understanding, so conformable to the simplicity of our practice, and to the general principles of our law, and has been so long acquiesced in, as to afford high evidence of the question having been settled by the highest authority."

In Ohio it was held, in 1826, that joint tenancy never existed in that state, and that a devise made to husband and wife gives them the rights of tenancy in common.   The court, in speaking of joint tenancy, says:

"The reasons which give rise to this description of estate in England never existed with us.   The right of survivor-

ship is not founded in principles of natural justice, nor in any reason of policy applicable to our society and institutions; but, on the contrary, it is adverse to the understandings, habits and feelings of the people." (*Sergeant v. Steinberger*, 2 Ohio, 305.)

In *Penn v. Cox*, 16 Ohio, 30, it was held that the doctrine of survivorship did not apply where the land had been sold to the husband and wife, and that the act regulating descents and distributions embraced the whole subject of descents, and was intended to provide for all cases. (*Wilson v. Fleming*, 13 Ohio, 68.)

In *Meeker v. Wright*, 76 N. Y. 262, it was decided that —

"Where, since the passage of the act of 1860 concerning the rights and liabilities of husband and wife, lands have been conveyed to the husband and wife jointly, without any statement in the deed as to the manner in which the grantee shall hold, they are tenants in common."

Subsequently, in *Bertles v. Nunan*, 92 N. Y. 152, that decision was overruled by a divided court. The reasons, however, given for that decision do not apply in this state, for in the opinion it is stated that under the statutes of New York —

"The ability of the wife to make contracts is limited. Her general engagements are absolutely void, and she can bind herself by contract only as she is expressly authorized to do so by statute. A husband still has his common-law right of tenancy by the curtesy. Although section 7 of the act of 1860 authorizes a married woman to maintain an action against any person for an injury to her person or character, yet we have held that she cannot maintain an action against her husband for such an injury; and so it was held, notwithstanding the acts of 1848, 1849 and 1860, that the common-law disability of husband and wife growing out of their unity of person to convey to each other still existed. (*White v. Wager*, 25 N. Y. 333; *Winans v. Peebles*, 32 id. 423; *Meeker v. Wright*, 76 id. 262, 270.) It is believed, also, that the common-law rule as to the liability of the husband for the torts and crimes of his wife are still substantially in force."

See to the contrary the decisions of this court already quoted; and, among others, *Norris v. Corkill*, supra.

It is claimed, however, that some of the decisions favorable to the view I maintain are not in point, because of express statutes concerning joint tenancy and tenancy in common.   If I read these decisions correctly, several of them are made solely upon the ground that the statutes giving to the wife her separate property rescind or abrogate the rule that a conveyance to husband and wife makes them tenants by the entirety, with right of survivorship.   Further than this, it has been expressly decided by courts adopting estates in entirety, that statutes abolishing joint tenancy have no application to a joint estate of husband and wife, or an estate in entirety. (*Diver v. Diver*, supra.)   In that case it was said:

"Nor does the act of March 31, 1812, which abolished survivorship among joint tenants, apply to such an estate, [in entirety,] for it is not a joint tenancy."

In *Marburg v. Cole*, 49 Md. 402, which is a decision sustaining estates in entirety, it was said:

" The code, art. 49, § 12, being the codification of the act of 1822, ch. 162, provides that no instrument of conveyance shall be construed to create a joint tenancy, unless it is expressly provided that the property shall be held in joint tenancy.   But, as we have seen, the estate conveyed to husband and wife in a deed like the one before us, is not to them as joint tenants at the common law, and hence the statute just referred to does not affect or apply to such an estate as that conveyed to husband and wife.   This has been expressly so held by this court in the case of *Craft v. Wilcox*, 4 Gill, 504. Similar statutes to our own exist in a large number of the states of the union, converting joint tenancies at the common law into tenancies in common, except where in the instrument it is otherwise expressly declared, and the invariable construction has been that they do not apply to or affect the peculiar estate taken by husband and wife under a deed to them jointly." (4 Kent's Com. 362.)

Therefore, if the decisions adopting or sustaining estates in entirety are to be followed, the various statutes referred to in the opinion concerning joint tenancy and tenancy in common, cannot have much force, because estates in entirety are founded upon the incapacity of the husband and wife to take separately,

or by moieties, and in these statutes estates in entirety are not expressly stated.

If the doctrine of estates in entirety be the proper one, then the statutes referring to conveyances made to two or more are not applicable to estates in entirety, because those estates are also founded upon the doctrine that husband and wife are one in law, and one only; therefore, conveyances to two or more do not apply to a conveyance made to husband and wife if they are only one in law.

Again, at common law, the right to control the possession of the estate of the wife under such a conveyance, during their joint lives, is in the husband, as it is when the wife is sole seized. The husband by that law has, during coverture, the usufruct of all the real estate which his wife has in fee simple, fee tail, or for life; so,'also, under the common law, the husband has the right to make a lease of the estate conveyed in fee to him and his wife, which will be good against the wife during coverture, and will fail only in the event of his wife surviving him. This view of the common law is stated by Mr. Chief Justice Nelson, in *Barber v. Harris*, 15 Wend. 616. Where a deed of real estate is made to the husband and wife—

"Each is seized of the entirety; but, being one person, there can be no moiety or separate estate between them, and the husband, therefore, cannot forfeit or alien the estate, because the whole of it belongs to the wife as well as to him. . . . During the life of the husband, he undoubtedly has the absolute control of the estate of the wife, and can convey or mortgage it for that period."

Mr. Chief Justice Beasley, in *Washburn v. Burns*, 5 Vroom, (N. J. L.) 18, announces the doctrine to be—

"When an estate in land is vested in husband and wife as an entirety under the common law, the husband is entitled to the use and possession of the property during the joint lives of himself and wife. During this period, the wife has no interest in or control over the property."

(See also *Pray v. Stebbins*, 141 Mass. 219; *Topping v. Sadler*, 5 Jones, [N. C.] 357; *Jones v. Strong*, 6 Ired. 367.)

This view of the matter is contrary to the decision in *Diver v. Diver*, supra; but that decision, upon the power of the wife to use and possess the property conveyed to her and her husband during coverture, is in conflict with the majority of decisions recognizing estates in entirety.

If we are to follow precedent in preference to principle, and adopt the old law of Great Britain concerning estates in entirety, it seems to me that the weight of authority should also be followed, to the effect that the wife has no interest or control over such estate during the joint lives of herself and husband. The ancient theory that husband and wife are one person in law, and one only, in view of our society and institutions, is, in my opinion, a mere fiction or myth, without any substance or reason, which it is useless and illogical to perpetuate. If husband and wife in taking, holding and possessing property are two persons instead of one only, as our constitution and laws recognize, and if husband and wife can take the estate by moieties as our laws permit, then the reason for the existence of an estate in entirety has wholly ceased, and such estates should not be recognized in this state. Such an estate was called "an oasis in the desert of the common law," when that law conferred wealth and power upon the husband, and poverty and dependence upon the wife. But in the condition of things under our constitution, laws and society, the excuse or reason for such estates is not to me apparent.

For the foregoing reasons I wholly dissent from the views expressed in the opinion, and also dissent from the judgment rendered.

I think that Frank A. Baker and Alice Baker, his wife, were tenants in common, and not tenants in entirety of the premises conveyed to them by Joshua Baker on November 23, 1877; and therefore, that the judgment of the trial court should be affirmed.