# SUPREME COURT,
## STATE OF KANSAS.

## JANUARY TERM, 1889.

PRESENT:

HON. ALBERT H. HORTON, CHIEF JUSTICE.
HON. DANIEL M. VALENTINE, ⎱ ASSOCIATE JUSTICES.
HON. WILLIAM A. JOHNSTON, ⎰

ABNER SHINN v. ELLA SHINN.

TENANTS BY THE ENTIRETY — *Judgment* — *Incumbrance upon Land.*
Where a husband and wife own certain land as tenants by the entirety, and the husband commences an action for a divorce against his wife, which action is afterward dismissed, but while it is pending the court renders a judgment in favor of the wife and against the husband for $30 as alimony, *held,* that such judgment is not an incumbrance upon the land.

*Error from Bourbon District Court.*

THIS was an action in the nature of ejectment, and for rents and profits, brought in the district court of Bourbon county on April 2, 1886, by *Ella Shinn* against *Abner Shinn,* to recover certain real estate in that county, and for rents and profits. It is admitted that April 17, 1882, and prior thereto, Abner Shinn was the owner of the land in question; but on that day he executed and acknowledged the following instrument in writing, and delivered the same to Eugene F. Shinn and Ella Shinn, who were then and still are husband and wife. Eugene

1 — 42 KAS.

F. Shinn is the son of Abner Shinn.    The aforesaid instrument in writing reads as follows:

### "WARRANTY DEED.

"This indenture, made this 17th day of April, 1882, between A. Shinn (widower), of Bourbon county, in the state of Kansas, of the first part, and Eugene F. Shinn and Ella Shinn, of Bourbon county, in the state of Kansas, of the second part, witnesseth, that the said party of the first part, in consideration of the sum of one dollar and natural love and affection, value of premises being $3,500, the receipt of which is hereby acknowledged, does by these presents grant, bargain, sell and convey unto the said parties of the second part, their heirs and assigns, all the following-described real estate, situated in the county of Bourbon and state of Kansas, to wit: The west half of the southeast quarter of section eighteen, of township twenty-five, of range twenty-five, containing eighty acres, more or less, according to the government survey, for the purpose of having the entire use and profit of the same, but not to have the right to sell, mortgage or incumber the same in any way for the period of ten years from the date hereof; this grant being for the use of said premises only, and not conveying the fee simple therein for the period of ten years from date; and if the grantees shall mortgage or in any way incumber said premises during said ten years, then this conveyance shall be void, and the premises hereby conveyed shall revert to the grantor; but at the expiration of said ten years the absolute title and fee simple to said premises shall vest in said grantees, if they do not incumber the same, to have and to hold the same after ten years from the date hereof, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, forever. And said A. Shinn, for his heirs, executors, or administrators, does hereby covenant, promise and agree to and with said parties of the second part, that at the delivery of these presents he is lawfully seized in his own right of an absolute and indefeasible estate of inheritance in fee simple, of, and in all and singular, the above-granted and described premises, with the appurtenances; that the same are free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances of what nature or kind soever; and that he will warrant and forever defend the same unto said parties of the second part, their heirs and assigns, against the said party of the first part, his

heirs, and all and every person or persons whomsoever lawfully claiming or to claim the same.

"In witness whereof, the said party of the first part has hereunto set his hand the day and year first above written.

ABNER SHINN. [Seal.]"

"STATE OF KANSAS, BOURBON COUNTY, *ss.*: Be it remembered, that on this 17th day of April, 1882, before me, the undersigned, a notary public in and for the county and state aforesaid, came Abner Shinn, who is personally known to me to be the same person who executed the within instrument of writing, and such person duly acknowledged the execution of the same.

"In witness whereof, I have hereunto set my hand and affixed my notarial seal, the day and year last above written.

[L. S.]        W. J. BAWDEN, *Notary Public.*
               (Commission expires March 4, 1884.) "

This instrument in writing was filed for record in the office of the register of deeds of Bourbon county on April 24, 1882. On September 24, 1887, this case was tried before the court without a jury, and the court found generally in favor of the plaintiff and against the defendant, and rendered judgment both for the recovery of the land and the rents and profits; and to reverse this judgment, the defendant, as plaintiff in error, brings the case to this court.

*J. D. McCleverty,* for plaintiff in error:

This case turns entirely upon the force and effect to be given to the deed or instrument under which the plaintiff below, Ella Shinn, claims title. The contention of the plaintiff in error is that it is not a deed, but, at most, a present lease for ten years from its date, upon a condition subsequent not to incumber, and an agreement to convey after ten years upon the same condition. If the circumstances of the transaction are to be considered in construing it, they tend to support this idea. It was a wedding gift from the father to his son. He appears to have had doubts as to the harmony of the proposed union, as is shown by the conditions of this instrument; doubts which, unfortunately, soon became a reality. To guard against this contingency he made his gift conditional.

Whatever may have been the intent, the contract as actually made must control. A grantor has the right to impose such conditions upon the grant as he deems proper, and the grantees, having accepted, must abide by them. They were "not to incumber in any way" the estate granted, and yet they suffered a judgment to be taken against them. This judgment, too, was the joint act of both of these grantees, since the record shows that the judgment was rendered upon the application of Ella Shinn, one of the grantees, and that E. F. Shinn, the other grantee, suffered and permitted it to be taken. Nor can it be claimed that this was inadvertently or blindly done and persisted in, for the record shows that immediately after this judgment for alimony the defendant below notified the plaintiff that he "no longer recognized any rights of Ella Shinn, or her husband E. F. Shinn, in this land." He continued to deny those claims, and Ella Shinn, after waiting until April, 1886, without then or at any other time asking to have this judgment set aside, brought this suit.

This condition, while a condition subsequent as to the term of years, is a condition precedent as to the agreement to convey; but in either event, if violated, the grantees would forfeit their rights. So, also, whether this instrument be construed either as a deed or a lease with an agreement to convey, it must be held that this judgment was a lien upon the title and interest of the grantees, as judgments are made liens upon the real estate of the debtor, (Code, § 419,) and the "phrase 'real estate' includes lands, tenements and hereditaments, *and all rights thereto and interest* therein, equitable as well as legal." See eighth subdivision of § 1 of the act "concerning the construction of statutes." The supreme court of Iowa, in construing these words, holds that a judgment is a lien upon a lease. (*National Bank v. Bennett*, 40 Iowa, 537.) This is the law of this state also; then this judgment became a lien upon whatever *interest* or *right* E. F. Shinn had in this land, and justified the reëntry then made by their grantor. That the breach of a condition, whether precedent or subsequent, will

avoid a conveyance, has been expressly decided in this state. (*O'Brien v. Wetherell,* 14 Kas. 467.)

So there can be no doubt of what was intended by *this* conveyance, and that a breach of the condition should work a forfeiture. Had these parties executed a mortgage, whether for $3,000 or for $30, it could scarcely be claimed that they had not broken the condition that they were "not to have the right to . . . mortgage." So also, it would seem equally clear that where Ella Shinn demands a judgment which she must know would be a lien and incumbrance upon E. F. Shinn's interest in this land, and he suffers such judgment to be rendered, that the condition was violated which provided that they were "not to have the right to . . . incumber the same in any way, . . . and if the grantees shall . . . in any way incumber said premises during said ten years, then this conveyance shall be void, and the premises hereby conveyed shall revert to the grantor, but at the expiration of said ten years the absolute title in fee simple shall vest in said grantees, *if they do not incumber the same.*"

Certain it is that Ella Shinn could have issued execution upon this judgment and levied it upon and sold her co-grantee's, E. F. Shinn's, interest in this land, and this as effectually as though a mortgage had been given.

By common experience we know that a lease for a term of years is usually upon some condition, as the payment of rent monthly, or a covenant not to assign, a violation of which works a forfeiture if demanded or enforced by the lessor, and he may reënter and take possession. (*Godfrey v. Black,* 39 Kas. 196. See also *Nichols v. Eaton,* 91 U. S. 716; *Lambert v. Haydel,* [Mo.] 9 S. W. Rep. 789.) But whatever may be the rule as to the validity of such a condition or limitation, when applied to a grant in fee, such conditions have always been held valid when applied to an estate for years, or any estate less than a fee. (Gray's Restraints on Alienation, § 101, and cases cited.) And for a violation thereof the lessor or grantor could reënter, or not, at his option. Hence if the grantor, defendant below, had not exercised his option by his

reëntry, Ella Shinn could, by issuing execution upon this judgment, have sold out the interest of E. F. Shinn in this land; which, if once actually done, would probably have transferred to the purchaser E. F. Shinn's right to the use of the land for the remainder of the ten-year term, if not also of the agreement to convey. To declare this forfeiture, therefore, and reënter upon the land, was the grantor's only effectual course; and that he might do so is determined in 39 Kas. 196, before cited.

*Ware, Biddle & Cory,* for defendant in error:

E. F. Ware, in addition to the printed brief, submitted orally: No judgment or execution against either party can run against this land. (*Baker v. Stewart,* 40 Kas. 442; *Davis v. Clark,* 26 Ind. 424.)

The opinion of the court was delivered by

VALENTINE, J.: The only questions presented in this case are with reference to the character of the title, interest and estate conveyed by Abner Shinn on April 17, 1882, to his son, Eugene F. Shinn, and to his son's wife, Ella Shinn, and whether such title, interest and estate have since been forfeited and lost, or not. It is not claimed in this case nor even pretended that Abner Shinn did not have the power to convey to his son and to his son's wife any kind of estate, interest or title in or to the land which he might have chosen to convey, for he held the whole of the estate and a perfect title, and could convey just what he chose. The questions presented, however, are these: What did he convey, and has the same been forfeited or lost? It seems to be admitted that Abner Shinn conveyed or transferred to his son and to his son's wife an interest of some kind in the property in question for the period of ten years, subject to a condition subsequent, and conveyed to them the full and complete title and estate forever afterward, subject to a condition precedent; but it is claimed by Abner Shinn that these conditions were afterward brought into existence, and that they so operated as to

produce a forfeiture of the grantee's interest in the property, and a transference of the same back to the grantor. It is probable, however, that the intention of the grantor was to convey to the grantees the entire estate and a fee-simple title, modified only by a limitation upon the power of the grantees for ten years to "sell, mortgage, or incumber" the property. The conditions upon which the property was conveyed as expressed in the deed, are that the grantees should not "sell, mortgage or incumber the same in any way for the period of ten years" from April 17, 1882. It is not claimed that the grantees have sold or attempted to sell the property, or that they have mortgaged or attempted to mortgage the same, but it is claimed that by their acts and sufferance they caused the same to be incumbered in the following manner, to wit: After this deed was executed, and on August 6, 1884, Eugene F. Shinn commenced an action for a divorce against his wife, Ella Shinn. Such action was afterward dismissed; but while it was pending the court rendered a judgment in favor of Ella Shinn and against Eugene F. Shinn for $30 as alimony; and it is claimed that this judgment is a lien and an incumbrance upon the land, and such an incumbrance as was contemplated when the property was conveyed by Abner Shinn to Eugene F. Shinn and his wife, and therefore it is claimed that such judgment has so operated as to divest Eugene F. Shinn and his wife of all their right, title and interest in and to the property, and to restore the same to Abner Shinn. Is this claim correct? Did the aforesaid judgment work a forfeiture of the estate of Eugene F. Shinn and his wife, and reinvest all interest in the property in Abner Shinn? Now whatever interest or title may have been conveyed or transferred by Abner Shinn to his son and to his son's wife as between the grantor himself and the grantees, whether the same were great or small, and whatever may have been the effect of the conditions contained in the deed, there was nothing contained in the deed or elsewhere prescribing what kind of an estate the grantees should take *as between themselves;* hence under the authority of the case of *Baker v. Stewart,* 40 Kas. 442, *et seq.,*

19 Pac. Rep. 904, *et seq.*, and the numerous cases cited in that case, they took their interests in the property, whatever such interests were, by entireties, and not as tenants in common or as joint tenants. In other words, each took the entire estate conveyed to him and did not take a separate portion of any estate. In such a case one alone, without the consent of the other, could not sell, mortgage or incumber the property. It would take the affirmative action of both to dispose of or to incumber the same or any interest therein. In procuring the aforesaid judgment both did not act. It was the act of the wife alone without the consent of her husband. And hence it would seem that this action on the part of one alone, and the non-action or resistance on the part of the other, and the resulting judgment, could not amount to or constitute a lien or an incumbrance upon the property. It will certainly not be claimed that merely suffering a lien to be procured upon the property would work a forfeiture of all interest under the deed; for if so, then the property must necessarily have been forfeited on the very first moment of the first day of the next November after the deed was executed, for on that day taxes became due upon the property, and became a lien and an incumbrance thereon, and these taxes could not possibly have been paid or avoided prior to their becoming a lien and an incumbrance. But as before stated, Eugene F. Shinn and Ella Shinn owned their interests in the property by entireties, and not as joint tenants or tenants in common. Neither owned a separate interest in the property, but each owned the entire property, and surely Ella Shinn in procuring a judgment in her own favor could not create a lien or an incumbrance upon and against her own property. And she certainly would not cause an execution to be issued to sell her own property. At common law the husband had the right to the use and control of all his wife's property, including that which she held as a tenant by the entirety with her husband as well as that which she held in her own right and by a separate title, and that which she held as a tenant in common or joint tenant with her husband or others. But our statutes have

materially changed this rule of the common law.   Under our statutes the wife now has the same right to the use and control of all her own property as her husband has to the use and control of his.   She now has the same right to the use and control of the interest in property which she holds with her husband or others as tenants in common, or as joint tenants, or as tenants by the entirety, as her husband or any one of the other tenants has to the use and control of a like interest in the property. The statutes do not attempt to abolish or affect tenancies by the entirety any more than they attempt to abolish or affect tenancies in common.   Both kinds of tenancies still exist, and both are alike affected as between a husband and wife by the foregoing statutes.   But as the wife now has the same right to the use and control of property held by herself and husband together as tenants by the entirety as he has, and as she has the right as well as he to the entire use and control of such property, the selling on execution or the otherwise disposing of the husband's interest in such property without her consent could not divest the wife of her right to the possession of the entire property, nor of her right to the use and control of the same.   In this connection see *Davis v. Clark*, 26 Ind. 424, and the several cases hereafter cited.

As long as the wife lives the property cannot be legally seized or sold on execution for the husband's debts; nor could the purchaser, if the property should be sold, take the possession of it, for the wife has the exclusive right to the possession thereof, and to the use and control of the same, except as against her husband alone, who has a like right to the possession, and to the use and control of the same.   But it may be claimed that as the husband has an equal interest with his wife in the property, and that as he might possibly outlive his wife and become the sole owner, the judgment should be considered as attaching to that possible contingent interest, and constituting a lien or incumbrance thereon.   But this cannot be true, as will be seen from an inspection of the following authorities: *Davis v. Clark*, 26 Ind. 424; *Chandler v. Cheney*, 37 id. 391, 414; *Patton v. Rankin*, 68 id. 245; *Thomas v.*

*DeBaum,* 14 N. J. Ch. (1 McCarter), 37, 40; *Jackson v. McConnell,* 19 Wend. 175, 178; *McCurdy v. Canning,* 64 Pa. St. 39; *Vinton v. Beamer,* 55 Mich. 559; same case, 22 N.W. Rep. 40. If in the present case the wife should live for more than ten years from April 17, 1882, the time for all forfeiture under the deed would then have passed, and no incumbrance could then produce any possible forfeiture under the deed, and certainly while she lives no lien can attach to the property, for the property is already hers, and by the entirety; or if she should outlive her husband, he could never have any interest in the property with respect to which the judgment could be enforced. And according to all the life-expectancy tables, a woman at any age up to 67 is likely to live more than ten years, and if she is not more than 35 years of age she is likely to live more than three times ten years longer. And according to all the life-expectancy tables, the tables of mortality and annuity tables which indicate the expectancy of life for males and females separately, the expectancy of life for a woman of any age is greater than the expectancy of life for a man of the same age and health. See American Almanac, any volume from 1879 up to the present time; Johnson's Cyclopædia, vol. 4, part 2, appendix, p. 1726; Chambers's Encyclopædia, vol. 6, p 576, Table of Mortality; Encyclopædia Britannica, vol. 2, p. 89, table 5; Encyclopædia Dictionary, title, *Annuity.* See also Report of Tenth U. S. Census, 1880, concerning mortality and vital statistics, vol. 12, part 2, p. 773, *et seq.;* otherwise vol. 13, part 12, of the House Miscellaneous Documents, same pages. A woman's expectancy of life at the following ages is as follows: At 18 years of age, 41.67 years more, or 59.67 years in all; at 20 years of age, 40.29 years more, or 60.29 years in all; at 25 years of age, 37.04 years more, or 62.04 years in all; at 30 years of age, 33.81 years more, or 63.81 years in all; at 35 years of age, 30.59 years more, or 65.59 years in all; at 40 years of age, 27.34 years more, or 67.34 years in all. A man's expectancy of life at any of the foregoing ages, and indeed at any age, is not quite so great as that of a woman at a corresponding age. It will be seen

that the chances that any young woman may die within ten years from any given time are very small, and the chances always are that a wife will outlive her husband unless she is older or in poorer health than he is. It will therefore be seen that there are difficulties in the way of enforcing a supposed lien like the present; and a lien that can never be enforced is no lien at all.

But we have not yet mentioned all the difficulties. A judgment lien operates only to prevent the judgment debtor from disposing of or incumbering his property so that the judgment cannot be enforced as against the property, and to prevent subsequent lien-holders from taking the property in enforcing their liens. Now as the property is held in entirety by the wife as well as by the husband, he could not and cannot alone dispose of it or incumber the same, even if the supposed lien should have no existence. Hence there is no room in this respect within which the lien could operate; also, as the property is held in entirety by both the husband and wife there is no separate estate or interest in either which could be levied upon, and unless the property is levied upon within one year after the judgment is rendered, the lien ceases to operate or to have force as against all other judgment creditors. (Civil Code, § 468.) Hence in this respect also there has never been a time and never will be a time when the present supposed lien could operate. If the husband should die first, the wife would take all the property without regard to the judgment or the supposed lien, hence in that case also there would be no room within which the lien could operate.

We have already considered the possible contingency of the wife dying first, and found that there was no sufficient room during her lifetime within which the lien could operate. And as she is still alive and the lien has not yet operated, there has not yet been any incumbrance, nor any forfeiture. And the husband's possible contingency of at some time having a sole and separate estate would be too uncertain and remote to constitute the basis for a present or existing judgment lien or for a present levy of an execution. Upon this question see

*Davis v. Clark,* 26 Ind. 424, 430, and upon the general question of subjecting property held by a husband and wife as tenants by the entirety to the payment of the husband's debts; see the authorities heretofore cited. In the American and English Encyclopædia of Law, volume 7, page 127, it is said that "as a general rule, only such property as the owner or debtor himself might sell can be taken on execution against him;" and on the same page in a note it is said that "a contingent interest not yet acquired is not subject to execution."

We do not think that the aforesaid judgment is any incumbrance upon the property in question, and therefore the judgment of the court below in this case will be affirmed.

JOHNSTON, J., concurring.

HORTON, C. J.: I fully concur in the affirmance of the judgment of the court below upon the ground that no acts of the parties come within the terms of the conditions of the deed that operate as a forfeiture of the title; but I strongly dissent from many things stated in the opinion.

The trial court construed the deed of the 17th of April, 1882, from A. Shinn to Eugene F. Shinn and his wife, Ella Shinn, as conveying to each an undivided one-half thereof; that is, that the deed made the husband and wife tenants in common in the real estate therein described. Ella Shinn, the wife, in her petition alleges that she is the owner and entitled to the immediate possession of the undivided one-half of the real estate in dispute; she did not in her petition nor does her counsel claim, that the deed conveyed to her and her husband an estate by entirety. At the time this action was brought and at the rendition of the judgment, Ella Shinn was the wife of Eugene F. Shinn. On August 6, 1884, an action for divorce was commenced by Eugene F. Shinn against his wife, Ella Shinn, but this action was afterward dismissed, leaving the parties husband and wife: $30 was allowed Ella Shinn as temporary alimony in that suit. No execution has ever been issued upon the allowance, and Ella Shinn is now and has always been willing to release the real estate in controversy

from any supposed lien of that order. Therefore the real estate has in no way been lost to the parties or seriously affected by the so-called lien, and, as I have already stated, I do not think that the judgment of temporary alimony in any way incumbered the estate conveyed within the terms of the deed. The majority of the court hold, following the opinion of *Baker v. Stewart*, 40 Kas. 442, that Eugene F. Shinn and his wife Ella Shinn, "took their interests in the property, whatever such interests were, by entireties and not as tenants in common, or as joint tenants." In other words, each took the entire estate conveyed to them, and did not take a separate portion of any estate. If this is a proper construction of the deed of the 17th of April, 1882 — and of course this construction must be conceded, if estates in entirety are to be recognized in this state, as declared by the majority of this court in *Baker v. Stewart*, supra — then I do not understand upon what the judgment of the district court was based, when it declared by its judgment that Ella Shinn, the wife, is the owner of and entitled to the sole and exclusive possession of an undivided one-half interest in the real estate conveyed by the deed. If the deed conveyed the real estate to Eugene F. Shinn and Ella Shinn his wife as tenants in common, as argued by counsel for Ella Shinn, then the judgment of the court below is correct, and ought to be affirmed; but if it conveyed to them an estate by entirety, then how can Ella Shinn, the wife, be given the possession and the right to control the undivided one-half during the joint lives of herself and her husband, Eugene F. Shinn? It will be admitted, I suppose, that if the deed conveys an estate by entirety, then Eugene F. Shinn, the husband, while living has at least the right to the possession and control of the real estate to the same extent that his wife, Ella Shinn, has. Then if Eugene F. Shinn and Ella Shinn each has, during their joint lives, an equal right to control the estate, can the district court give to Ella Shinn the exclusive possession and control of an undivided one-half? There can be no partition of an estate by entirety during coverture, for this would imply a separate interest in each,

and from the peculiar nature of this estate there must be unity of interest, unity of possession, and unity of control, unless the husband, following the rule of the common law, is entitled by his marital rights to the control of his wife's estate. This case seems to me to forcibly illustrate the difficulties in adopting, "under our constitution and laws of society," the old law of Great Britain concerning estates by entirety.

Again, if estates by entirety are recognized in this state, I think the great weight of authority is that the wife has no control over the estate during the joint lives of herself and husband. Clearly, at common law, the husband had the right to the use and control of his wife's property, and hence had the right to the use and control of the property which was held by them as tenants by entirety.

It is stated in the opinion that "our statutes have changed this rule of the common law, and that the wife now has the same right to the use and control of the property held by herself and husband together as tenants by the entirety, as he has." In Pennsylvania and Indiana there are decisions supporting this view, but the decisions of most of the states where estates by entirety are adopted or recognized, are otherwise, notwithstanding such states have statutes relating to married women, similar to our own. Thus in *Pray v. Stebbins,* 141 Mass. 218, it is said:

"The statutes enabling a married woman to receive, hold, manage and dispose of real and personal property in the same manner as if she were sole, cannot, we think, be construed to apply to the estate by entirety of a husband and wife, because other statutes in effect prevent this conveyance from being construed as creating a tenancy in common; and if a married woman held this estate as if she were sole, she would hold it as a tenant in common with her husband."

In Washburn on Real Property (vol. 1, p. 707) it is said:

"If the husband convey the entire estate during coverture, and dies, his conveyance will not have affected her rights of survivorship to the entire estate. But if in such case the husband survive, his conveyance becomes as effective to pass the whole estate as it would have been had the husband been sole

seized when he conveyed. And during coverture the husband has the entire control of the estate, and the same is liable to be seized by his creditors during his life."

See *Hall v. Stephens*, 65 Mo. 670; also *Ames v. Norman*, 4 Sneed, 692.

In Pennsylvania, the statute relating to the rights of property of married women clearly embraces estates held by them by entirety, and therefore it is doubtful whether the Pennsylvania decisions apply under our statute, which is different. (*McCurdy v. Canning*, 64 Pa. St. 39; Pa. Married Woman's Act of April 11, 1848.)

In Indiana, the supreme court of that state says in its opinion that an estate by entirety does not come within the strict letter of the statute relating to married women, but that it comes within the spirit of it. (*Chandler v. Cheney*, 37 Ind. 391.)

In *Baker v. Stewart*, it was held that the statutes of this state relating to married women, and giving to them the right to control and manage their own separate property, did not in the least affect the question as to what estate passed by deed to a husband and wife. From this doctrine I dissented. (40 Kas. 454–468.) Now it is held in the opinion that the statutes relating to married women give the wife the same right to the use and control of the real estate held by her in entirety, as the husband. As I said in *Baker v. Stewart*, supra, if we are to follow precedent only in this matter, and estates by entirety are recognized or adopted in this state, it seems to me that the great weight of authority should also be followed, to the effect that the wife has no interest or control over such an estate during the joint lives of herself and husband. In my opinion, if the statutes of the state relating to married women do not in the least affect the old common-law doctrine as to the estate passed by deed to a husband and wife, then these statutes can have no application to an estate by entirety, as they have reference to the wife's separate or sole estate. (*Pray v. Stebbins*, supra, and the cases there cited; see also *Bradley v. Love*, 60 Tex. 472.) Where the husband and

wife are seized of the estate by entirety, they are seized by the whole, and not by a part; the wife has no moiety or separate interest.

The way out of the whole difficulty, it seems to me, would have been to declare the law to be, that within the spirit if not the letter of the statutes relating to married women existing in this state, when lands have been conveyed to the husband and wife jointly without any statement in the deed as to the manner in which the grantees should hold, they should be treated as tenants in common.

A portion of the opinion is devoted to speculations over the probabilities of Ella Shinn, the wife, living longer than the husband, Eugene F. Shinn. In this connection life expectancy tables are referred to. I do not think that these tables, in this case, have much application. Such tables are generally based upon the average duration of a multitude of human lives. Many persons are in good health, or at least of average health. According to the testimony, Ella Shinn seems to be a person greatly diseased. At the time her testimony was given, she stated "she was under the care of a physician; that her health was very poor; that she was obliged to take medicine every day; and that she was in such a nervous condition she was unable to be away from home alone." In the brief her counsel state "that when she was married, she was a healthy young lady; that she became sick three or four months after her marriage; that she has continued sick ever since; that no amount of property will ever restore her health, and that she deserves, not only the undivided half of the eighty acres of land to sustain her during her life of illness, but all that Eugene F. Shinn may ever own." The evidence shows the conveyance was made to Ella Shinn and her husband as a wedding present, soon after their marriage. This was the 17th day of April, 1882. Finally, if Ella Shinn and her husband hold the real estate by entirety, and are both entitled to the same right in the use and control of the property, can the wife in a separate action, not joining her husband with her, recover the rents and profits of any part? In an

estate by entirety, as declared in *Baker v. Stewart*, there is but one owner, and that is neither the husband nor the wife, but both together.

The pleadings and the testimony are in the record presented to us. The testimony is undisputed, and in such a case the court must apply the law to the facts. As there is no conflict in the testimony, this court can as well decide the legal effect of the testimony in the record as the court below. The defendant below excepted to the judgment, and this exception goes to the rents and profits as much as to any other .part of the judgment. Can this judgment be sustained, if the real estate is held by entirety? Is this judgment a bar to an action that may be brought by Ella Shinn and her husband, Eugene F. Shinn, for the possession of all or a part of the premises, or for the rents and profits? Is the judgment a bar to any action by the husband, Eugene F. Shinn, for rents and profits? In view of the opinion in this case, these and many other interesting inquiries, which it seems to me difficult to logically answer, naturally present themselves, if the nice distinction created in the ancient books of estates by entirety are in line with our statutes, judicial decisions, and the condition and wants of our people, as decided by the majority of this court in *Baker v. Stewart*, supra.