## L. D. BRADLEY v. P. H. LOVE.

(Case No. 1335.)

1. JURISDICTION.— The proceedings of probate courts in all matters relating to the administration of estates of deceased persons can only be attacked in a collateral proceeding, when the record shows affirmatively that the court had no jurisdiction of the subject matter, or that its jurisdiction had not attached.

2. SAME.— But when this is shown, or when it appears, from the record itself, that the court had no jurisdiction of the person (in a case where this is required), the question of jurisdiction may be raised on objection to the record when it is offered in evidence, being a nullity on its face.

3. SAME — DISTRICT COURT — COLLATERAL ATTACK.— Where under the statute
   the district court acts as a court of probate (the county judge being disqual-
   ified), its jurisdiction over the subject matter is neither greater nor less than
   that of the probate court of the county; so that if, in a probate proceeding
   before the district court sitting as a court of probate, it appears that its ob-
   ject was to try the title to land, and this is affirmatively shown by the
   record, its adjudication upon such title is a nullity, and subject to collateral
   attack.
4. SAME.— Title to land, cast by descent from the mother to the heirs, it being
   the separate property of the mother, cannot pass by virtue of an order or
   judgment of the probate court, rendered in the administration of the estate
   of the deceased father. Title to such interests can no more pass, by virtue
   of orders of the probate court, adjudging the land to belong to the father's
   estate, than could title to the lands of a stranger.
5. SEPARATE PROPERTY — JURISDICTION — INNOCENT PURCHASER.— When the
   deed made by the father to his daughter and her husband, in the division of
   his estate, recited in the *habendum* clause "to have and to hold the afore-
   said lands unto them, the said David Love and Mary Love, their heirs and
   assigns, forever," and purported to be made upon a consideration of $1,000, ·
   it was *held*,
      (1) No consideration having been paid, and the evidence (properly ad-
   mitted) showing that the property was intended as a gift, the terms of the
   deed determine that it was a gift both to husband and wife.
      (2) The wife acquired thereby an undivided half interest in the land as
   her separate property, and a purchaser, with notice of the state of the title,
   acquired no title by purchase at administrator's sale, ordered by the probate
   court in administering the estate of the deceased husband, to the interest
   inherited from the mother.
      (3) The absence of notice to the creditor of the deceased husband of the
   wife's separate interest is immaterial. The case of Grace *v.* Wade, 45 Tex.,
   522, has no application.
      (4) The doctrine announced in Grace *v.* Wade, 45 Tex., 522, is only appli-
   cable to such judgment liens and others as are recognized as subsisting
   liens in law, and cannot be extended to cases not embraced in the original
   rule.

APPEAL from Robertson. Tried below before the Hon. Spencer
Ford.

Love and others brought this suit against L. D. Bradley for an
undivided half of two thousand three hundred and one acres of
land, and for partition, alleging a common source of title in James
Dunn; that James Dunn deeded the land to D. H. Love and Mary
Love, his wife, on August 31, 1850, reciting in said deed a consid-
eration of $1,000; that Dunn was the father of Mary Love; that
no consideration in fact was paid to Dunn for the deed; that it was
a deed of gift to D. H. and Mary Love; that plaintiffs were the
heirs of Mary Love; that she died September 20, 1856, intestate;
there was no administration on her estate, and plaintiffs inherited
one-half of the land from her; that defendant Bradley owned the

other half, and claimed the whole under a sale made to him on December 4, 1877, by L. G. Sandifer, administrator *de bonis non* of D. H. Love's estate, under a decree rendered in the district court of Freestone county, sitting in probate (the county judge being disqualified), said decree ordering the whole of the land to be sold to pay community debts of D. H. and Mary Love; that the sale was reported to said court, and confirmed April 10, 1878; that said decrees were nullities in so far as they attempted to determine the right of plaintiffs to one-half of the land, and Bradley had actual and constructive notice of plaintiffs' title at the time of his purchase; that the court rendering the decrees had no jurisdiction to determine the right of plaintiffs to the land; that the purchase money notes given by Bradley for the land were not due until December 4, 1878; that Bradley did not agree to pay but one-half of what the land was worth; that he excluded plaintiffs from the possession and profits; that H. D. Prendergast was Bradley's agent, and collected and withheld the rents from plaintiffs; that Bradley's claim is a cloud on plaintiff's title; praying for judgment for one-half the lands and rents, to remove cloud, and for partition.

Defendant answered: That D. H. Love died in April, 1866; that one Henry Rook had a claim against his estate, and on March 22, 1873, filed his petition in the district court of Freestone county, sitting in probate, to have his claim adjudged a debt against the community estate of D. H. and Mary Love, and to have land sold to pay it; and on July 17, 1874, J. M. Love, administrator of D. H. Love's estate, filed his petition in said district (probate) court against all persons interested in the estate, and against the heirs of Mary Love, the plaintiffs in that suit, to have the Trudoe land declared to be community land of D. H. and Mary Love, and to have it sold to pay community debts; and that the plaintiffs in this suit were all cited and answered the petition, and claimed that the land was the separate property of Mary Love; and on October 3, 1877, the said district court, sitting in probate (the county judge being disqualified), adjudged the Rook debt to be a community debt, and the Trudoe land to be community land, and ordered it sold to pay said Rook debt; and it was sold by L. G. Sandifer, administrator *de bonis non* of D. H. Love's estate, on December 4, 1877, and Bradley became the purchaser for $1,800; the sale was confirmed April 10, 1878; that said judgments were still in force, and were a bar to this suit; that at the time of sale neither Bradley nor Rook, for whose benefit the land was sold, had any notice of plaintiffs' claim to the land; that

Bradley bought in good faith, and paid a fair price for the land, and plaintiffs were estopped from claiming said land.

Jury waived, and the court gave judgment for plaintiffs for one-half the land and rents, and for partition.

*H. D. & F. H. Prendergast,* for appellants, cited: Parker *v.* Chance, 11 Tex., 514; Yates *v.* Houston, 3 Tex., 446; Lynch *v.* Baxter, 4 Tex., 445; Wright *v.* McNatt, 49 Tex., 429; Miller *v.* Rogers, 49 Tex., 413; Johns *v.* Northcut, 49 Tex., 456; Cryer *v.* Andrews, 11 Tex., 181; Harrison *v.* Oberthier, 40 Tex., 385; Davis *v.* Wells, 37 Tex., 606; Withers *v.* Patterson, 27 Tex., 498; Milam County *v.* Robertson, 47 Tex., 231–2; Pasch. Dig., art. 5469; Guilford *v.* Love, 49 Tex., 715; Bigelow on Estoppel, 146, note 1; Poland *v.* Davenport, Tex. Law Jour., January 8, 1879; Scott *v.* Maynard, Dallam, 548; Love *v.* Robertson, 7 Tex., 6; Kirk *v.* Navigation Co., 49 Tex., 213; Veramendi *v.* Hutchins, 48 Tex., 531; Cooke *v.* Bremond, 27 Tex., 457; Hudson *v.* Jernigan, 39 Tex., 587; Mitchell *v.* Marr, 26 Tex., 331; Dunham *v.* Chatham, 21 Tex., 247.

On the doctrine of innocent purchaser without notice, they cited: Dunham *v.* Chatham, 21 Tex., 247; Smith *v.* Boquet, 27 Tex., 512; Taylor *v.* Harrison, 47 Tex., 459; Love *v.* Berry, 22 Tex., 377; Grace *v.* Wade, 45 Tex., 522; Watson *v.* Flanagan, 14 Tex., 354; Ellis *v.* Singletary, 45 Tex., 41; Parker *v.* Chance, 11 Tex., 517; Cooke *v.* Bremond, 27 Tex., 457; Veramendi *v.* Hutchins, 48 Tex., 550; 1 Story's Eq., 420, p. 388, Red. ed.; 45 Tex., 530, and authorities cited.

*Collard & Field,* for appellees.

(No briefs of counsel for appellees are on file, but they submitted the case on an elaborate and able printed argument.)

WATTS, J. COM. APP.— In this state probate courts are courts of general jurisdiction in all matters relating to the administration of estates of deceased persons. And their judgments can only be attacked in a collateral proceeding when the record affirmatively shows that the court had no jurisdiction of the subject matter, or that its jurisdiction did not attach in the particular matter attempted to be adjudicated.

As was truly said in Murchison *v.* White, 54 Tex., 82, "If, however, from the record itself it should affirmatively appear, either that the court did not have jurisdiction of the subject matter, or of the person, in a case where this was also required, or that the jurisdiction had not attached in the particular case, then the question

can be raised upon objection to the record when offered in evidence, and no affirmative proceeding need be prosecuted to vacate it. Being a nullity upon its face, it could not legally be invoked against those whose just rights were sought to be affected by it."

In this case the orders and judgments of the district court sitting as a probate court are to have precisely the same force and effect as if made by the probate court. If the county judge is disqualified in any particular estate, then the statute for the purposes of administering that estate constitutes the district court a court of probate for that purpose. When acting as such, the district court possesses, and may exercise, all the powers conferred upon the county court, but its jurisdiction is precisely the same as that of the county court; no greater, nor no less.

It is provided in the constitution that the district court alone has jurisdiction of all suits for the trial of title to land and for the enforcement of liens thereon. If, then, the proceeding instituted in the probate court had for its object the trial of the title to the land in controversy (and such was the result of the proceeding), and it thus affirmatively appears from the record, then no argument is necessary to establish that the court had no jurisdiction, and the adjudication was a nullity, and subject to collateral attack.

Admitting, then, as claimed by the appellees, that the land was the separate property of their mother, at her death their title, except a life estate of one-third in the father, was a distinct, independent title, vested in them by law, and in no way connected with, or dependent upon, the results of an administration of the father's estate. So far as that title is concerned, they would occupy the position of strangers to the father's estate. And the power and jurisdiction of the probate court would be the same as to them as to any other strangers.

While the probate court has the power to require additional inventories, and to make orders with reference to how the property shall be inventoried,— whether as separate or community property,— in the exercise of these powers it must be remembered that it has no jurisdiction to try and determine title to land.

It very clearly appears that the result of the proceeding now under consideration was an attempt upon the part of the probate court to inquire into and determine the title to the land. For if, as claimed by appellant, the land was community property, then it was assets, and subject to administration; while if, as claimed by appellees, it was, in whole, or in part, the separate property of their mother, to that extent it would not be assets, and the probate court,

in that administration, could have no power or control over it. Title to such separate property would no more pass by such order than if the lands of any other stranger had been adjudged to belong to the estate, and ordered sold.

In our opinion the proceeding in probate court respecting this land can constitute no barrier to a recovery upon the part of appellees. That is, it is not *res adjudicata* as to them upon the question of title.

Next in order is the question as to whether or not the land was, in whole or in part, the separate property of Mrs. Love. Upon this point the evidence is not as full as might be desired, but it, in effect, shows that James Dunn, desiring to divide his lands among his four children, called them together, and, after making them equal as to former advancements, he divided his lands into four lots, placed them on separate pieces of paper, and the children drew by lot from a hat. In this Cavett represented his wife and Love his wife. Subsequent to that time Dunn had the deeds prepared by a practicing attorney. The deed under consideration was made to " David Love and his wife, Mary Love," with the following provision therein: " To have and to hold the aforesaid lands unto them, the said David Love and Mary Love, their heirs and assigns forever." This deed purports to be made upon a consideration of $1,000 paid by the grantees.

Then, standing alone, and unaided by extrinsic evidence, the legal effect of this deed would be to make the land community property. But this is not the conclusive effect of the conveyance, except as to innocent third parties whose rights have attached. Upon this *prima facie* effect of the deed evidence is admissible to show that it was a gift either to the one or the other, and when that is established the property would no longer be considered as community, but the separate property of those for whom the gift was intended. In other words, the legal effect would be the same as if no valuable consideration had been mentioned, but that the conveyance purported to be based on love and affection.

Here the evidence sufficiently showed that no valuable consideration was paid for the land, but that in fact it was a gift. And while we might naturally expect that the gift would be made to the daughter, rather than jointly to herself and husband, yet there is no reason for indulging in such presumption against the legal effect of the conveyance.

When the fact is established that the conveyance was based upon a good, as distinguished from a valuable, consideration, the legal effect of the conveyance, standing alone and unaided by extrinsic

circumstances, would be that it was a gift jointly to the husband and wife, which would result in each having an undivided half interest in the land as separate property.

As before remarked, from the fact that Dunn was dividing his property among his children, it would be more natural to expect that he would make the gift to the daughter rather than to herself and husband jointly. But under our system title to land can be conveyed to a married woman in her own name as effectually as if it was conveyed to a person laboring under no disability.

It appears that after the division James Dunn had this deed prepared by a practicing attorney, who, it is to be presumed, knew the effect of the deed, and gave the grantor full information respecting the same. Then the presumption would arise that he intended that the conveyance should have its purported effect, when considered with reference to the facts attending its execution. In other words, that he intended it as a joint gift to the husband and wife. That seems to have been the conclusion reached by the court below, passing upon the evidence, and it seems to us that the evidence warranted the conclusion.

While appellant seeks the protection of an innocent purchaser, the evidence shows that he had notice of the claim of appellees before he purchased the land. He, however, claims that Rook, for the payment of whose claim the land was ordered to be sold, had no notice; and, under the rule announced in Grace v. Wade, 45 Tex., 522, and other cases, to the effect that a judgment-lien creditor who, without notice, has caused a levy to be made upon land under his judgment, or who has acquired a judgment lien, without notice of an unrecorded deed or other claim, the subject of registration, is not affected by any subsequent notice of the claim, and the purchaser under such judgment occupies, in this respect, the place of the creditor, appellant claims that he ought to be protected.

This doctrine is only applicable to such judgment liens and others, recognized as subsisting liens in law. It would be a most dangerous doctrine if extended and applied to *quasi* judgments and *quasi* charges upon land. That doctrine should not be extended to other than the cases embraced in the original rule. In our opinion, it has no application to the case before the court.

As to the other errors complained of, it is not necessary to consider them. From the views announced it follows that the judgment ought to be affirmed.

                                                 Affirmed.

[Opinion adopted December 7, 1883.]