### John W. Helvie *et al.* v. Silas C. Hoover.

(Filed July 17, 1902.)

1. **ESTATES BY ENTIRETY.** The common law rule of estate by entirety does not obtain in this territory.

2. **TENANCY IN COMMON.** A transfer of real estate by ordinary warranty deed to Silas C. Hoover and Lourinda Hoover, who are husband and wife, is held to convey to each an undivided one-half interest in the fee simple.

3. **TRUST—When Presumed.** By section 3760 of the Laws of 1893, it is provided that when a transfer of real estate is made to a person, and the consideration therefor is paid by or for another, a trust is presumed in favor of the person by or for whom the payment is made.

(Syllabus by the Court.)

*Error from the District Court of Cleveland County; before C F. Irwin, Trial Judge.*

*C. W. Brewer* and *Shartel, Keaton & Wells,* for plaintiff in error.

*Newell & Jackson,* for defendant in error.

STATEMENT OF FACTS.

This is an action brought by the plaintiff in error

against the defendant in error in Cleveland county. The petition alleges that on and prior to March 19, 1900, the defendants, Silas C. Hoover and Lourinda Hoover, were husband and wife; that on that date Lourinda Hoover died, leaving as her sole heirs her husband, the defendant in error, and the plaintiffs in error, her brothers; that on December 19, 1899, Lourinda Hoover purchased lots 1, 2, 3, 4 and 5 in block 84, in the city of Norman, Oklahoma, the consideration therefor being $5,000 of which one thousand was paid in cash from her separate funds, and she obligated herself to pay the remaining $4,000 in annual payments of one thousand dollars each, a mortgage being taken upon the property to secure the deferred payments; that after making the purchase Lourinda Hoover expended for improvements the sum of one thousand dollars. When the property involved was purchased, the transfer of title thereto was by the usual form of warranty deed, executed by the grantors, T. W. Hendricks and Victoria Hendricks, his wife, to Silas C. Hoover and Lourinda Hoover, parties of the second part.

The petition alleges that Silas C. Hoover became invested, as above stated, with a legal interest in the estate, but that he did not pay any part of the purchase price thereof; that he had expended no amount whatever thereon; that by reason of the premises Silas C. Hoover was, during the lifetime of Lourinda Hoover, the trustee of an undivided one-half interest in the real estate described, for her use and benefit, and since her death is a trustee of an undivided one-half interest for the use and benefit of her heirs.

To this petition a general demurrer was filed, which was was sustained by the court. The plaintiffs electing to stand upon their petition, appealed, and the cause is brought to this court for review.

Opinion of the court by

PANCOAST, J.:  This case involves but one principal question, viz.:  What was the title of Silas Hoover and Lourinda Hoover to the property conveyed to them by' T. W. Hendricks and Victoria Hendricks, his wife?  And one minor question, which is:  Does the law, under the allegations of the petition, presume that Silas C. Hoover holds the interest conveyed to him in trust for the use and benefit of Lourinda Hoover and her heirs?

It is contended by the plaintiffs in error that the title conveyed was that of tenants in common; that each took an undivided moiety thereof, and that Silas Hoover held his interest in trust for the use and benefit of Lourinda Hoover and her heirs.  The defendant in error contends that the estate conveyed by the deed to Silas C. Hover and Lourinda Hoover is what is termed at the common law tenants by entirety, being a peculiar estate of joint tenancy existing only as between husband and wife, or, if not such an estate, then the estate was that of joint tenancy.

It is contended by the plaintiffs in error that the title rule of the common law, the interest conveyed by the deed in this case would be a joint estate for life, the survivor taking the whole estate, but it is claimed that under our statutes such estates have been abolished, or, in any event, are inconsistent with our present law.  Under the common law rule of England, where real property was' conveyed to husband and wife in the manner employed in this case, the title was held to be one of tenants by entirety, which was a peculiar class of joint tenancy, not having some of the necessary essentials of ordinary joint tenancy.  An estate in joint tenancy, properly speaking at common law, could be created only by purchase,

while the estate by entirety could only exist as between husband and wife, and might be acquired by purchase or otherwise; yet the right of survivorship existed in both estates, there being a difference, however, in the authority of the husband to control the estate during the lifetime of the parties from the right of control exercised by joint tenants in other cases. The principal difference between joint tenancies at the common law and tenants in common, was in the right of survivorship. Where the property was held by either of the two classes of joint tenancy, there was nothing to inherit in case of the death of either of the parties, because the title was for the life of the tenants, the survivor taking the fee to the whole estate. They were not seized of moities, but of entireties. In such cases the survivor does not take as a new acquisition, but under the original limitation, his estate being simply freed from the participation of the other, so that in case of the death of either of the joint tenants there is nothing to descend to the heirs of such deceased person, the survivor taking the entire estate to the exclusion of the heirs of the deceased. There is no conflict between the authorities under the common law rule with reference to the joint estates of either kind. The conflict arises only in cases based upon statutory provision, where the common law rule is expressly repealed, or where it has been held to be repealed by implication, or, from principle, being inconsistent with and repugnant to our modern ideas of the relation of husband and wife, and having no place in our jurisprudence.

In many of th cases decided the difference between joint tenancy and tenancy by entirety is overlooked, and in many instances, where the title is in the husband and wife, the law of joint tenancy as between other persons has been applied. Following this method of considering such estates, counsel

for defendant in this case, while noticing the distinction between the two classes of joint tenancy, do not stand squarely on either. We think it necessary to notice the distinction, as having some bearing in this case, for the reason of the rule must help to determine whether or not the rule still exists.

In Kent's Commentaries, vol. 4, page 362, the author states that:

"Conveyances to husband and wife * * * by reason of the unity of husband and wife, are not strictly joint tenancies, but conveyances to one person. They cannot take by moieties, but they are both seized of the entirety, and the survivor takes the whole."

In Devlin on Deeds, vol. 1, sec. 117, the author says:

"At common law, where an estate in fee was conveyed to a man and his wife, they were held to be neither joint tenants nor tenants in common. Considered as one person in law, they could not take the estate by moieties. * * * The husband is entitled to the possession during their joint lives, but upon the death of one the whole estate vests in the survivor."

In Washburn on Real Property, vol. 1, page 672, we find it stated that if property is conveyed to husband and wife "they are neither tenants in common nor properly joint tenants, though having the right of survivorship, but are what are called tenants by entirety. While such estates have, like a joint tenancy, the quality of survivorship, they differ from that in this essential respect, that neither can convey his or her interest so as to affect the right of survivorship in the other. They are not seized, in the eye of the law, of moieties, but of entireties."

This author, in speaking of the two classes of joint tenancy, indicates that the right of joint tenants may be severed by a conveyance during the lifetime of either of the parties interested. This is not upheld by any of the older authorities, nor does this author specifically state this to be the rule. See also the same author, vol. 1, pages 673 and 674, where the question is fully discussed with statutes and citations set out at length. The author concludes that "the policy of the American law is opposed to the notion of survivorship, and therefore regards such estates as tenancies in common." (Vol. 1, page 644.)

Coming, then, to the proposition, does the old unmodified common law rule prevail in this territory? Is it in force? Is it in harmony with our modern ideas and statutory provisions giving the wife the right to acquire property, handle and convey the same, freed from all the legal fictions of the common law pertaining to married women?

The common law rule of joint tenants was the outgrowth of the English feudal system. The common law rule of tenants by entirety was evolved by reason of the idea of the nonentity of the wife during the marriage relation, the oneness of the husband and wife, as it is generally expressed by the authorities; In other words, the legal restrictions make it impossible for the wife to have other legal existence than that of her husband. In some of the states this rule was adhered to until abolished by statute. In others, the rule was adhered to until laws were enacted giving the wife a legal existence, with the right and power to hold property separate and apart from her husband, when the courts of such states held that the rule had been abolished, and was no longer in harmony with the modern law in relation to marriage, and the right of the wife to hold and manage her separate estate. Other states,

notably Ohio, Nebraska, Missouri and others, hold that the rule of the common law with reference to joint tenancy never did exist there; that the reasons which gave rise to this description of estates in England never existed here; that the rule was not founded on principles of natural justice, nor in any reasons of policy applicable to modern society or institutions, but, on the contrary, is adverse to the understanding, habits and feeling of the people; that no statute existed recognizing any such principles as the right of survivorship, but that various statutory provisions were inconsistent with it. (*Sergeant v. Steinberger*, 2 Ohio, 305; *Wilson and Marsh v. Fleming, et al,* 13 Ohio, 68; *Kerner v. McDonald* [Neb.] 84 N. W. 92; *Robinson's Appeal* [Maine] 33 Atl. 632; *Hoffman v. Stigers,* 28 Iowa, 307; *Whittlesay v. Fuller,* 11 Conn. 337; *Wilson v. Wilson,* 43 Minn. 398; *Cooper v. Cooper,* 76 Ill. 57; *Donegan v. Donegan,* [Ala.] 15 Southern, 823; *Bradley v. Love,* 60 Tex. 472; *Washburn v. Burns,* 34 N. J. Law 18.)

Tiedeman in his work on Real Property, section 237, speaking of this class of estates, says:

"The American law has been in opposition to joint tenancy, and has shown more favor to tenancies in common. The doctrine of survivorship has been considered repugnant to the American sense of justice to the heirs. A number of the states have by statute abolished joint tenancy altogether, except in the cases of trustees and other persons, holding a joint estate in a fiduciary capacity; while it may be stated as a general rule in the rest of the states, that a joint estate will be presumed in every case, except that of trustees, etc., to be a tenancy in common, unless expressly declared to be a joint tenancy, even though the four unities are present."

Chancellor Kent in his Commentaries, vol. 4, page 361, in treating of this subject, says:

"The common law favored title by joint tenancy, by reason of this very right of survivorship. Its policy was averse to the division of tenures, because it tended to multiply the feudal services, and weaken the efficacy of that connection. But in *Hawes v. Hawes,* Lord Hardwicke observed, that the reason of that policy had ceased with the abolition of tenures; and he thought that even the courts of law were no longer inclined to favor them; and at any rate, they were not favored in equity, for they were a kind of estates that made no provision for posterity. As an instance of the equity view of the subject, we find that the rule of survivorship is not applied to the case of money loaned to two or more creditors on a joint mortgage. The right of survivorship is also rejected in all cases of partnerships, for it would operate very unjustly in such cases. In this country, the title by joint tenancy is very much reduced in extent, and the incident of survivorship is still more extensively destroyed, except where it is proper and necessary, as in the case of titles held by trustees."

We think in every instance where text writers have written upon this subject, they have come to the conclusion that where joint tenancy and tenancy by entirety are not upheld either by special statute or by very early adjudications that the state courts have almost uniformly held against the doctrine.

Counsel upon both sides have cited the case of *Baker v. Stewart,* 19 Pac. Rep. 904, the plaintiff relying upon the opinion of the majority of the court, and the defendant citing the dissenting opinion delivered by Chief Justice Horton. There is no question but that the decision of the majority of the court in that case, as delivered by Justice Valentine, is a correct statement of the common law rule. And it is just as true that in the dissenting opinion by Horton, chief justice, is given the correct analysis of the more modern rule, which is in opposition to the common law rule; and here it may be

remarked that the first legislature that convened after that decision was rendered repudiated the doctrine, and passed an act abolishing it.

Under the ancient doctrine of the common law, the husband and wife were not only one person in law, but the very legal existence of a woman was suspended during the marriage relation. She was entirely under the protection and influence of her husband. We think that in no state has a married woman been given such right and control over her own property during the existence of the marriage relation, as has been given to her by the statutes of this Territory. Here she is not only allowed to contract, to purchase and control real and personal property upon her own account, as fully and to the same extent as is ordinarily allowed married men in other states, but she is allowed to sell and convey her real estate without the consent or signature of the husband, and she is allowed to thus control her property and dispose of the same of every kind and character except the homestead; and while her interest in the homestead cannot be conveyed without her consent, yet she may by separate deed convey her interest in the homestead to an extent that she cannot afterwards repudiate her act. Thus it will be seen that while the old rule of the common law that a married woman had no legal entity, and while the courts, as a rule, have been slow in conceding the wife's equality with her husband, and the right to enjoy equally with him the rights of property, to-day under our statutes, as they now exist, there is no distinction whatever. There is no right whatever that is suspended during the marriage relation. They are not in any sense, as at common law, only one person. With reference to their right to contract for, buy and sell property and handle the same, they are as separate and distinct as though the marriage relation did

not exist. She is not under the protection and influence of her husband in any respect, so far as it relates to her private property. They are in fact, two separate and independent persons, and the husband has no more interest in or control over the wife's property than he has interest in or control over property belonging to any other person. There is absolute equality of the husband and wife. There is nothing in the nature of bondage. The individuality of each remains the same as before marriage. The wife and husband may deal with each other with reference to property, buy and sell and convey to each other as freely and to the same extent as though the marriage relation did not exist. Surely then if in any state the principle of the common law with reference to estate of joint tenancies and estates by entirety are repugnant to the modern ideas of the relation of husband and wife, and the rights of married women to hold and convey property, such principle cannot be upheld in this territory.

We cannot understand how it can be contended that a married woman who is clothed with all the authority to hold, accumulate, control and sell her separate property can at the same time be held not to exist as a legal entity, but be so merged in her husband as to be wholly under his dominion. Certainly no such legal fiction can obtain here. In fact, section 2978 of the Statutes of 1893 expressly provides that the woman "shall retain the same legal existence and legal personality after marriage as before, and shall receive the same protection of all her rights as a woman which her husband does as a man. And for any injuries received to her reputation, person, property, character or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection, that her husband has to appeal in his own name alone."

It is contended, however, by the defendant in error, that section 2971 of the Laws of 1893 upholds the doctrine of joint tenancy. This section simply provides that the husband and wife may hold real and personal property together as joint tenants, or tenants in common. In other words, the section, taken as a whole, means that the husband or wife may hold real or personal property together in the same manner that any other persons may hold property together. We do not wish to be understood as holding that property cannot be conveyed to two or more persons as joint tenants, if the same is so expressed in the deed.

It is also contended by defendant in error that by reason of the repeal of section 1637 of the Statutes of 1893, which was an act passed by the first legislature of the territory, that the legislature has put its seal of approval on estates in joint tenancy and by entirety. We cannot concede this position. This section provided that no estate in joint tenancy should be held or claimed under any grant, devise or conveyance whatso ever, unless the premises therein mentioned should be therein expressly declared to pass.

We think that the first legislature having declared that no estate in joint tenancy could be held or claimed except in the cases provided, that it put its seal of disapproval on the common law rule of estates in joint tenancy. Had this section not been repealed by section 46 of the Laws of 1897, and wholly left out of the chapter of conveyances we would not have deemed it necessary to continue this decision to such length. By the adoption of this statute alone the legislature cut off the existence of the common law doctrine of join tenancy in this territory. It is claimed, however, that the repeal of this section revived the common law rule. But this is not correct, for our statute expressly provides that when-

ever any act of the legislative assembly is repealed, which re-pealed a former act, such former act shall not thereby be re-vived, unless it shall be expressly so provided. (Sec. 2696, Laws 1893.)

Similar sections of statutes have been repeatedly held to apply to the repeal of the common law rule, as well as statu-tory enactments. So that we may properly conclude that the rule of the common law of joint tenancy, because of the adoption of section 30, chapter 21 of the Statutes of 1893, never had any existence in this territory, and that the repeal of that section did not revive the common law rule. We think that the estate conveyed by the deed in question in this case was a fee simple title of an undivided one half interest to each of the grantees, and that upon the death of either of the grantees, such interest would descend to the heirs.

It is contended by plaintiff in error that it was error to sustain the demurrer in this case, because of section 3760 of the Statutes of 1893, which provides that when a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made. The petition alleging that the consideration was paid by Lour-inda Hoover, this section would have application here, and the law will presume a trust in favor of the person who made such payment. This however, is a mere presumption which may be overthrown by evidence.

We therefore conclude that the court below erred in sus-taining the demurrer to the petition. The judgment of the court below is reversed, and the cause is remanded with direc-tions to overrule the demurrer to the petition.

Irwin, J., who presided in the court below, not sitting; all other Justices concurring.