OKLAHOMA CITY v. VAHLBERG, Co. Treas., et al.

No. 32101. Oct. 22, 1946.

*173 P. 2d 736.*

A. L. Jeffrey, Municipal Counsellor, of Oklahoma City, for plaintiffs in error City of Oklahoma City and Earle M. Simon, City Clerk.

Twyford, Smith & Crowe, of Oklahoma City, for plaintiff in error D. Schmidt.

Warren H. Edwards, Co. Atty., and Fred L. Hoyt, Asst. Co. Atty., both of Oklahoma City, for defendants in error.

RILEY, J. This is an action by the city of Oklahoma City, Earle M. Simon, city clerk, and D. Schmidt, the owner of street improvement bonds, against the board of county commissioners of Oklahoma county and W. F. Vahlberg, county treasurer, to recover the proportionate part represented by said street improvement bonds from rentals on real estate which were collected by the county from real property which had been sold to the county at tax resale for delinquent ad valorem taxes and delinquent special improvement assessments.

Judgment was for defendants, and plaintiffs appeal.

In 1928 Oklahoma City created a paving district in which certain lots in Park Place addition were included. Special assessments were levied against lot 6 in block 18, lots 10 and 11 in block 18, lots 12 and 15 feet of lot 13 in block 33, and lot 14 in block 33. Paving bonds were issued and sold and plaintiff D. Schmidt is the owner of the unpaid bonds.

Ad valorem and special assessment installments became delinquent and special assessments were certified to the county treasurer and the above lots were advertised and sold to the county for said delinquent ad valorem and special improvement taxes. Thereafter, at the 1939 resale the lots were offered for sale and there being no private bidders, the lots were sold to the county and a resale tax deed issued to the chairman of the board of county commissioners. The delinquent ad valorem taxes, penalties, and interest as advertised against all the lots amounted to the sum of $341.30, and delinquent special assessments amounted to $1,603.67.

After the resale tax deed was issued, the county rented the property and collected rent in the net amount of $766.68. The trial court found that a division of net rentals between the county and the special improvement fund in the proportion of the respective amounts thereof would allow the special improvement fund the sum of $635.58, which would leave $131.10 to go to the county.

The trial court concluded that while the law on trusts, particularly 60 O.S. 1941 § 137, construed in connection with section 4321, Title 68 O.S. 1941, constituted the defendants trustees for the funds derived from the sale of property acquired by the county at resale, yet under section 4321, supra, they are not required nor authorized as such trustees to divide the rentals from such resale property in such proportion, or in any proportion, and that the plaintiffs have no right, title, or claim to or against such rental collections.

Plaintiffs present their assignments of error:

"The rentals derived by the board of

county commissioners from properties acquired at tax resale are to be divided in the proportion that the advertised amounts of special assessments involved bear to the amount of ad valorem taxes involved, and the proportion due to the special assessments should be paid to the city as trustee and collecting agent for the bondholders".

Thereunder, plaintiffs contend that the net rentals due them are $635.58. It is asserted that if the resale statutes are construed to mean that the city and bondholders are not entitled to their proportionate share of the rentals, the construction would impair the obligation of the bondholders' contract and the judgment of the trial court so construing the law impairs the obligation of the contract and deprives the bondholder of his property without due process of law, contrary to the 5th and 14th Amendments of the Constitution of the United States and contrary to section 7, art. 2, of the Bill of Rights of the State of Oklahoma.

The laws existing at the time of the issuance of municipal bonds and the authority under which they are issued enter into and become a part of the contract in such a way that the obligation of the contract cannot thereafter be, in any way, impaired or its fulfillment hampered or obstructed by a change in the law. Moore, County Treas., v. Otis, 275 Fed. 747; Dickinson, County Treas., v. Tidd, 137 F. 2d. 610; Perryman v. City Home Builders, 121 Okla. 150, 248 P. 605; Prince v. Ypsilanti Sav. Bk., 140 Okla. 131, 282 P. 282.

The question of how the money derived from the ultimate sale of the lots involved shall be distributed is not involved in this action. The sole question goes to the disposition of rentals collected by the county from property acquired at resale for delinquent taxes while such property is held by the county.

Section 13, ch. 66, S.L. 1939, 68 O.S. 1941 § 432l, provides:

"The proceeds of the sale of property acquired by the county at resale . . . and the proceeds of leases, rentals, and other royalties arising from the management, control, and operation by the county commissioners of property acquired by the county at resale, shall be credited and accounted for in a special cash fund to be styled the 'Resale—Property Fund' of such county except the proceeds of sale of such property located in any special improvement district and by the resale of which any special improvement taxes were cancelled, in which event the proceeds of sale thereof after having been acquired by the county, shall be divided ratably between the Resale—Property Fund and the special improvement tax account of the special improvement · district in · which such property is located, in the same ratio as the ad valorem tax bears to the special improvement taxes in the total amount of such taxes published as due at the time of the resale . . . That portion so accruing to such special improvement tax account shall . . . be applied to the fund provided for the retirement of the bonds and interest coupons of such improvement district."

By the above provision, as applied to property within a special improvement district, the rentals derived therefrom after conveyance at resale to the county are applied to the resale—property fund of the county, but the proceeds of the ultimate sale of such property are prorated between said fund and the special improvement account.

In the face of this statutory provision, plaintiffs contend that the rentals as well as the proceeds of the sale of the property, if and when sold, must be prorated. It is clear that by the statute the right of the city to share in the rentals is denied.

The basis of plaintiff's contention is that the right of the city and bondholder to share in the rentals arose by reason of the lien of the assessments upon the lots and that with the extinguishment of the lien at resale to the county for delinquent taxes and assessments, which plaintiffs assert is to be deemed a consideration, the county became trustee for the benefit of the resale—property fund and the special improvement tax account to which, under such trust, the

rentals are to be allocated in the ratio stated above.

The lien, to the benefit of which the bondholder is entitled under his contract, is created by section 23, ch. 173, S.L. 1923, as follows:

"Assessments in conformity to the appraisement and apportionment as corrected and confirmed by the governing body of such city or town, shall be payable in (10) equal annual installments, and shall bear interest at the rate of seven per cent (7%) per annum until paid, payable in each year at such time as the several installments are made payable. The governing body of said city or town shall, by ordinance, levy assessments in accordance with said appraisement and apportionment, as so confirmed, against the several lots and tracts of land liable therefor. Said ordinance shall provide that the owners of the property so assessed shall have the privilege of paying the amounts of their respective assessments without interest within thirty (30) days from the date of the publication of such ordinance. Such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the publication of the ordinance levying the same, co-equal with the lien of other taxes and prior and superior to all other liens against such lots or tracts of land, and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

It is not urged, nor could it be, successfully, that the tax lien upon the lots could, of its own force, attach to the rentals accruing to the ownership of the lots. "A lien upon property does not attach to rents from the property unless specifically included". 33 Am. Jur. 424; 37 C.J. 324; State ex rel. Com'rs of Land Office v. Nat. Bk. of Commerce, Pawhuska, 139 Okla. 134, 281 P. 579.

The lien created by section 23, supra, is a statutory lien against the lots assessed, but rentals derived from the lots,

in the hands of the owner, are not specifically included. The assessment is not a debt. City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, 35 A.L.R. 872.

After the resale and issuance of a resale tax deed, whether to the county or a private purchaser, all liens for which the sale was had are extinguished. Dickinson v. Tidd, supra; Prince v. Ypsilanti Sav. Bk., supra; McGrath v. Oklahoma City, 156 Okla. 34, 9 P. 2d 711. The only theory upon which the right of bondholders to share in such rentals can be predicated is that of an estate in the land. This is sought to be established by the fiction that with the purchase of the land by the county, on the basis of taxes and assessments as the purchase price, an equitable estate in the land arose to the bondholder by reason of which the bondholder was entitled to share on a pro rata basis in all benefits that accrued, until the special assessments were paid. As authority for such equitable estate in land, there is cited and relied upon, 60 O.S. 1941 § 137, which provides:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

This section is an embodiment of the rule at common law. Barnes v. Lynch, 9 Okla. 11, 156, 59 P. 995.

The nature of such a trust is declared in Flesner v. Cooper, 39 Okla. 133, 134 P. 379, to be:

"Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred; but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner."

And it was further said in the opinion:

"The interest of the cestui que trust in a resulting trust is not a mere 'equity'; it is an equitable estate in the land or other thing of which the legal title is vested in the trustee, and, as such, it may be conveyed, transferred, devised, or otherwise dealt with as property."

It is apparent from the language of the statute that payment by the cestui que trust of the consideration for the conveyance is a prerequisite to the establishment of the trust. In this connection, we declared, in Boles et al. v. Akers, 116 Okla. 266, 244 P. 182, as follows:

"A resulting trust is that such a trust can arise only in favor of a person who claims to have furnished the consideration money, when such consideration, or some aliquot part thereof, was furnished as a part of the original transaction at the time the purchase was made."

If, in the instant case, the bondholder lost the value of his equity, which is represented by the right to share in the proceeds of the sale of the lot, in contradistinction to the statutory lien which was but evidence thereof, it could be said that a valuable consideration moving from the bondholder entered into the purchase. But, in view of the provisions of section 4321, supra, which expressly provide the right to share in proceeds of the ultimate sale, there is no basis for the claim of consideration paid and hence no ground to invoke the trust statute, even if same could be held applicable notwithstanding section 4321, which deals expressly with the matter.

The only right that accrues to the bondholder by virtue of the lien is the assurance of sharing in the proceeds of the sale of the property upon which the assessment constitutes a lien. Even if this right might have been forfeited by a resale under the law in force at the time the bonds were issued, said right is not now forfeited since it is preserved by the provisions of section 4321,

supra. The only change caused by said section is in affording a method of realizing benefits from the sale of the property only after the method previously obtaining had proved unavailing by reason of there having been no cash purchasers. Previous to its extinguishment by the resale conveyance, the evidence of the right to share in the proceeds of the sale was reflected in the statutory lien. Subsequent thereto, the right to share in the proceeds of the ultimate sale declared by the statute, section 4321, supra, is in substance the same as an equitable lien.

The right of the bondholder, which is a floating equity, does not entitle him to share in the rentals which accrue solely to the proprietary estate in the lots.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, WELCH, and DAVISON, JJ., concur.