M. B. CAMERON, Appellant,

v.

J. F. STEPHENSON and J. M. Huber
Corporation, Appellees.

No. 9028.

United States Court of Appeals
Tenth Circuit.

June 23, 1967.

Richard L. Bohanon, Oklahoma City, Okl. (Joseph F. Rarick, Bert Barefoot, Jr., J. Edward Barth, and Barefoot, Moler, Bohanon & Barth, Oklahoma City, Okl., with him on the brief), for appellant.

Paul Brown, Oklahoma City, Okl. (George N. Otey, of Otey & Evans, Admore, Okl., attorney for J. F. Stephenson, and Thomas O. Moxcey, Denver, Colo., attorney for J. M. Huber Corp., with him on the brief), for appellees.

Before BREITENSTEIN, SETH, and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this diversity action tried without a jury, appellant-plaintiff sought the forfeiture of Oklahoma oil and gas leasehold interests. She alleged the breach of covenants to pay certain overriding royalty interests reserved by her in assignments of the leases to appellee-defendant Stephenson. The district court held that there was no breach and denied forfeiture. On the counterclaim of Stephenson and appellee-defendant J. M. Huber Corporation, to which Stephenson had assigned an interest in the leases, the court reformed the assignments by eliminating the forfeiture provisions. The court also quieted the title of the defendants. This appeal followed.

Plaintiff was in the business of trading and brokering oil and gas leases. She negotiated with the owners of certain tracts for the execution of these leases on the payment of a bonus of $60 an acre. Defendant Stephenson made the bonus payment of $5,880 and, on December 9, 1960, the leases were issued to plaintiff. On December 30, 1960, she assigned the leases to Stephenson reserving a $\frac{1}{16}$ of $\frac{7}{8}$ overriding royalty. The pertinent provisions of each assignment read thus:

"There is hereby excepted from this assignment and reserved to the assignor an undivided $\frac{1}{16}$ of $\frac{7}{8}$ part of the oil, gas and casing-head gas produced from the above described property which part assignee for himself, his heirs, executors and assigns covenants to deliver free of cost to the credit of assignor at the pipeline to which he shall connect his wells; and it is expressly agreed and understood that the burden of this covenant is hereby made a lien upon the above described leasehold and shall run with the lease and be binding upon all subsequent assignments, modifications, renewals or encumbrances thereof, and the assignor shall upon a breach of this covenant be entitled to the forfeiture of this assignment and to recovery of the rights and interests hereby assigned."

Stephenson assigned one-half of his working interest in the leases to his co-defendant Huber which became the operator of the leases. Huber drilled and completed six productive oil and gas wells on the leases. After unsuccessful attempts to sell the oil to others, Huber sold it to Rock Island Oil & Refining Company. At the time, there was no pipeline connection to the wells and the nearest Rock Island pipeline was 14 miles from the wells. Plaintiff signed division orders submitted by Rock Island whereby Rock Island agreed to pay at the price posted by it

"for oil of the same grade and gravity in the same producing field or fields in the area on the date said oil is received by [it]. If, however, it is necessary to transport crude oil hereunder by truck, then in that event [it is] authorized to deduct from such price, the trucking and handling charges."

For a time, the oil was trucked and the plaintiff made no objection to the deduction of a 22-cent per barrel trucking charge.

Plaintiff later received another division order providing for payment "at the price posted by Rock Island Oil & Refining Co., Inc., effective 10–19–64,

less 10¢ per bbl." Plaintiff protested this order and did not sign until a clause was inserted saving her rights against Stephenson and Huber under the lease assignments.

The 10¢ a barrel charge was the result of an agreement between Huber and Rock Island whereby Rock Island undertook to build a pipeline to the wells and pay part of the cost thereof. The remainder of Rock Island's cost was to be recouped by a 10¢ per barrel deduction in payments to the lessees and the royalty holders. This deduction was to continue until a specified amount of oil had been purchased or a stated date reached. Plaintiff asserted that the charge for pipeline cost violated her assignment to Stephenson and brought this action to enforce the forfeiture provisions of the assignments.

At the time of the trial, all payments under the pipeline agreement had been made and the deductions had ended. The total deduction for the plaintiff's share of the pipeline cost was $248.59. If during the period of these deductions the oil had continued to be carried by truck, the deductions would have been $946. The plaintiff's net receipts from her overriding royalty interests amounted to approximately $14,000 at the time of trial. The net value of the leases sought to be forfeited was $850,502, with $245,173 remaining as unrecovered costs on January 1, 1966.

In spite of the disparity between the amount which plaintiff says she has lost and the value of the property for which she demands a forfeiture, she insists that the violation of her legal rights justifies her action and entitles her to the resulting windfall. The prime question is whether the 10¢ per barrel deduction for the pipeline cost breaches the obligation to pay the reserved overriding royalty.

The assignment requires the assignee to deliver the royalty oil "free of cost to the credit of assignor at the pipeline." Plaintiff makes no claim that the trial court was wrong in its finding that the arrangement reached by Huber and Rock Island for the construction of the pipe-

line was "made by Huber in good faith and by arm's length negotiation, but without consulting the plaintiff." Also she makes no attack on the finding that: "The best price that could be obtained for the oil produced on the leases was the price paid by Rock Island under the arrangement made with Huber Corporation."

We consider these facts to be determinative. The assignments required that her part of the production should be delivered free of cost to the pipeline. This was done. Huber unsuccessfully offered the oil to others before making the arrangements with Rock Island. No showing is made that any other purchaser was or could have been interested or would have paid any higher price than Rock Island after the 10¢ per barrel deduction.

In Meeker v. Ambassador Oil Co., 10 Cir., 308 F.2d 875, 882, reversed on other grounds 375 U.S. 160, 84 S.Ct. 273, 11 L.Ed.2d 261, we defined an overriding royalty as

"a fractional interest in the gross production of oil and gas under a lease, in addition to the usual royalties paid to the lessor, free of any expense for exploration, drilling, development, operating, marketing and other costs incident to the production and sale of oil and gas produced from the lease."

Plaintiff says that the 10¢ charge is a marketing cost which must be borne by Stephenson and Huber. The Meeker case had nothing to do with marketing and its definition of an overriding royalty, with which we agree, has no bearing on the issue here presented. We are not concerned here with an express or implied duty to produce and market. Our concern is with an obligation to deliver free of cost to the pipeline.

The decisions cited by plaintiff are not persuasive. Foster v. Atlantic Refining Co., 5 Cir., 329 F.2d 485, concerned a lease which provided for royalty based on the "market price therefor prevailing for the field where produced when run," Id. at 488. The holding was that the lessee had to pay royalty based on the

field price at the time of delivery even though it had entered into a long-term contract with a pipeline to sell at a lesser price. Atlantic was bound by the terms of the contract which it had made even though it was a bad bargain. In Barton v. Laclede Oil & Mining Co., 27 Okl. 416, 112 P. 965, the lessee agreed to pay royalty on all gas used and sold off of the premises. It then made an agreement with a purchaser whereby it was paid for only ½ of the gas used off the premises. The court held that the royalty had to be paid on all gas as required by the royalty agreement. Clark v. Slick Oil Co., 88 Okl. 55, 211 P. 496, was an action for conversion and damages for failure to deliver the lessor's share of the oil to the pipeline. In the case at bar, delivery of the plaintiff's royalty share is not questioned.

■ In considering situations where oil is produced from land where a market is not readily available, the text writers say that the royalty owner must bear the transportation charges.[1] This principle was followed in Kretni Development Co. v. Consolidated Oil Corp., 10 Cir., 74 F.2d 497, 499–500, which held that a lessor was not entitled to royalty based on price received at the end of a 90-mile pipeline because the lessee was under no duty to provide pipeline facilities. Indeed, the plaintiff recognizes her obligation to stand the trucking charges imposed prior to pipeline construction even though those charges were about 120% greater than the pipeline deductions.

■ Plaintiff was entitled to delivery free of cost at the pipeline and to receive the market price at that point. Delivery was made without expense to her. On substantial and uncontradicted evidence the trial court found that the best price which could be obtained for the oil was that paid by Rock Island under the arrangement with Huber. The court said that "the market price during the period of the deductions must be deemed the posted price less ten cents a barrel." We are convinced that the plaintiff has failed to show any breach of the assignments.

The district court reformed the assignments by the deletion of the forfeiture provisions. The consideration for the leases was a $60-per-acre bonus. The $5,880 required was paid entirely by Stephenson. In accordance with what the trial court found to be a customary practice in the oil business, the leases were taken in plaintiff's name. They were then assigned to Stephenson with a reservation of a 1/16 of 7/8 override. The forfeiture provision was placed in the assignments by the plaintiff without any discussion thereof with Stephenson.

The Oklahoma statutes provide:[2]

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

■■ This section is an embodiment of the rule at common law.[3] At common

---

[1]. In 3A Summers Oil & Gas, § 590, p. 145, it is said: "It is quite uniformly held in cases involving the marketing of gas that the lessor or royalty owner must bear the expense of transportation of his royalty gas to the point at which it is actually sold, and following this line of cases it has been held that where there was no market for oil in the field and the lessee transported the oil to a distant refinery by pipe line, the lessor must bear his portion of the expense of transportation." The rule is thus stated in 3 Williams Oil and Gas Law, § 646.2, pp. 605–606: "Although the operator may have a duty to market a non-operator's share of production, this duty will not include the burden of bearing the expense of treating, compressing or transporting such share of production." In Merrill, Covenants Implied in Oil and Gas Leases, 2d ed. § 86, p. 220, is this statement of the principle: "If there is no market value in the field, establishment of a fair value by anything other than value at the point of disposition less the cost of transportation can rest only on speculation."

[2]. 60 Okl.St.Ann. § 137.

[3]. Oklahoma City v. Vahlberg, 197 Okl. 613, 173 P.2d 736, 740.

law, and in Oklahoma, a purchase-money resulting trust arises by operation of law whenever it appears that the beneficial interest is not to go to the person holding the bare legal title. No express understanding is required, and the presumption arises from the payment of the purchase money.[4] If the presumption is to be rebutted, the party opposing the trust has the burden of presenting evidence adequate to overcome it.[5] In the case at bar, payment of the purchase money by Stephenson was admitted and no evidence was introduced to rebut the presumption. The trial court correctly held that plaintiff had the legal title subject to a resulting trust in favor of Stephenson.

The plaintiff says that this holding does not justify reformation because the law of executed contracts applies and under it all prior negotiations were merged into the assignments executed by her and delivered to Stephenson. She relies on our decision in Strouhal v. Allied Development Co., 10 Cir., 220 F.2d 541. That case related to the reformation of a deed conveying Oklahoma land. We held that in the absence of mutual mistake or fraud there could be no reformation. The difference between Strouhal and the case at bar is that in Strouhal the party against whom reformation was sought did not have any fiduciary relationship with his opponent. Here such relationship existed. We are not concerned with the admissibility of parol evidence to vary the terms of a written contract. Rather we are concerned with actions of a trustee contrary to her trust.

In Ewert v. Jones, 8 Cir., 236 F. 712, the court ruled that an agent who secured Oklahoma mining leases for his principal with money advanced by the principal held under an enforceable resulting trust. This result was reached even though the agreement for the acquisition and transfer of the leases was unenforceable under the Oklahoma Statute of Frauds. Plaintiff says that this case is not applicable because in it there was no enforceable contract, whereas here the assignments constituted such a contract. The reasoning is circuitous. We see little difference in ultimate effect between a failure to convey and a conveyance contrary to a trust.

Oklahoma law permits reformation when one party makes a mistake and the other party commits fraud or engages in inequitable conduct. This rule was recognized in Newbern v. Gould, 162 Okl. 82, 19 P.2d 157, 160, where reformation was granted because of the inequitable conduct of an agent in making a conveyance of property through a "strawman" to himself. He conveyed title by an instrument which enlarged the interest conveyed by the omission of his principal's reservation of mineral rights. Fraud was not claimed. The court said, Id. at 160, that "the record shows inequitable conduct on the part of plaintiff which of itself entitles defendant to the relief prayed for [reformation]." The action of the plaintiff here in placing the forfeiture clauses in the assignments was no less inequitable. She was bound to convey the leases to Stephenson who had paid the purchase money. She had no right to reserve anything for herself except the overrides which Stephenson had agreed would be her commission for obtaining the leases.

Plaintiff insists that reformation is impermissible because there was no mistake on the part of Stephenson but rather a negligent failure to read the assignments. The testimony as to what happened on the delivery of the assignments is conflicting. Plaintiff testified that she delivered the assignments to Stephenson and pointed out the forfeiture provisions. This was contradicted by Stephenson's office manager who said that plaintiff's father alone delivered the assignments.[6] Stephenson said that

---

4. McKenna v. Lasswell, 207 Okl. 408, 250 P.2d 208, 210.

5. See Helvie v. Hoover, 11 Okl. 687, 69 P. 958, 962.

6. The father was dead at the time of trial.

the assignments were delivered to the office manager and that he did not look at them because of his trust in the plaintiff's father. The trial court resolved this conflict in favor of Stephenson and found:

> "In the discussions with Stephenson leading to the acquisition of the leases, there was no mention made by either of the parties of such a forfeiture clause to be contained in the assignments. It was inserted by the plaintiff without consulting the defendant Stephenson and was not discovered by Stephenson at the time the leases were delivered to him, * * *." [7]

 Oklahoma City Federal Savings & Loan Ass'n v. Clifton, 183 Okl. 74, 80 P.2d 283, 286, holds that a negligent failure to read an instrument does not bar reformation. In that case there was a binding contract with which the conveyance did not conform. The same principle should apply here because the obligations of a trustee under a resulting trust are no less binding than those of a contracting party.

We recognize the rule that courts will not rewrite contracts. That rule is subject to the qualification that courts will reform contracts to make them comply with prior agreements. The overwhelming weight of the evidence is that plaintiff verbally agreed to obtain the leases with money paid by Stephenson and to assign them to him with a reservation of overriding royalties as compensation for her services. The reformation of the assignments by the deletion of 'the forfeiture provisions makes them comply with this agreement.

In Dennis v. American-First Title & Trust Co. (Okl.), 405 P.2d 993, 997, it is said that to justify reformation "the proof must be full, clear and unequivocal and sufficiently convincing to establish the facts to a moral certainty." We are so convinced.

Affirmed.

---

[7] The trial court also found that Stephenson did not discover the forfeiture clauses until suit was commenced. The record shows that at some undisclosed time after delivery of the assignments he had constructive notice of such clauses. We do not deem this fact to be of controlling importance.